[PHILADELPHIA; APRIL 3d, 1837.]

2 Wh 387
30 SC 462

§ WACK *against* SORBER.

IN ERROR.

To take a parol gift of land out of the statute of frauds, it is necessary that it should
    appear that the donee had made improvements, which added to the permanent value
    of the land; and that by reason of his expenditure upon such improvements, he would
    be prejudiced by the rescinding of the contract.  Where the benefit to the donee by
    the possession of the land has exceeded his expenditure upon it, the statute will be
    enforced.

THIS was a writ of error to the Court of Common Pleas of Le-
high County, to remove the record of an action of ejectment brought
by Charles Sorber against John Wack, to recover two acres and
five perches of land, situate in Maccungy township, Lehigh county.

On the trial before BANKS, President, in September, 1836,
the plaintiff gave in evidence a patent from the commonwealth,

to Henry Romig for one hundred and forty-four acres, dated May 31st, 1788; a deed from Henry Romig and wife to Henry Reichart, dated April 20th, 1830, for two acres and five perches, (being the land in dispute,) for the consideration of $600; and a deed from Reichart and wife to the plaintiff for the same land, for the consideration of $100.

The defendant then gave in evidence certain articles of agreement between Henry Romig and his son John H. Romig, dated the 2d of June, 1824, whereby, in consideration "as well of fatherly love, and the fulfilment of the covenants and yearly reservations towards the support and maintenance of the said Henry Romig hereinafter mentioned, as also for the sum of $950, and of his share of inheritance," &c., the said Henry Romig agreed to sell to his son all his real estate, excepting the land in dispute.

The agreement contained the following stipulations:—

"The said Henry shall have an unmolested dwelling place during his natural life, or until he has built himself a house on his two acres of land. The said John Romig shall also permit Esther, (wife of John Wack,) my daughter, to dwell in the house during my lifetime, or until I may have built a house on my land; and if I should die before a house is built, then the said John shall assist my daughter Esther to build a house on my land, but it shall be paid out of her moneys; he is likewise to assist me to build the house, should I build before I die; he is also to give and find rails or timber for fencing the land."

The defendant then examined several witnesses to prove a parol gift by Henry Romig to his daughter, the wife of the defendant, and an expenditure of money by the defendant upon the land. The material parts of the testimony are as follows:—

Jacob Romig. "As near as I can recollect, John Wack, and Esther, his wife, lived on the land seven years last fall. Wack made a garden on it, a sort of a cow-stable, and repaired the fences. Wack paid the taxes; last year I paid the taxes for Wack." *Cross-examined*—"I did not see Wack pay the taxes. Henry Romig lived with his son John; he did not live in the house which his daughter Esther moved into; I was not present when Wack and wife moved into the house and took possession of the property; Henry Romig died in 1831; the old man did not live in the house any part of these five years; John Romig died in 1831; I saw John Wack work at the stable; this was soon after Wack moved in, the first or second year; Esther Wack is living."

John Gabel. "Henry Romig came into my shop and said his daughter Esther was sorry he had married again; she must not be sorry—he said she should have the house; it was worth $1000; at the time this was said, the house was begun, but not quite finished."

(Wack v. Sorber.)

*Cross-examined*—" Nothing was said about giving it to her in his will; I do not recollect having testified before the arbitrators that the old man said he would give it to her by will; this was about seven years ago; I do not recollect whether any thing was said about length of time; the testimony before the arbitrators was given in German; if I said it before the arbitrators, it is a fact, but I cannot recollect it."

Daniel Snyder.  " Henry Romig asked me to quarry stones for him for this house; I asked him if he would build a house in his old days; he said he would build one for himself and his daughter Esther; that she should have it as long as she lived; Wack has worked on the land, and he put the things in order on the land."

Nathan Shaffar.  " Henry Romig said to me his daughter Esther Wack was opposed to his marrying; she need not be so against it, she would not lament so much; he had given her the house and lot, and that he valued at $1000; I cannot say whether Wack and wife were in the house and lot at that time; Wack built a sort of a cow-stable on the lot, and made the fences; I can't say whether he made all the fences or not; I saw him work at the fences."

Daniel Yeager.  " I was present when Henry Romig loaded stones, and he said he wanted the stones to build a house for himself and his daughter Esther; Wack and wife moved on the property as soon as the house was built; Henry Romig was there, and assisted them to move in; he said the little room in the house he had reserved for himself, and that he would move into it on the 1st of next April; he did not say how long Esther should have the house; she had lived with the old man fifteen or sixteen years; she lived with him before he lost his first wife, and long afterwards; Wack and wife have built a stable on the lot, fenced the garden in, repaired the fences, and sowed the lot in; the stable is worth $20 or $30; the house and lot would rent for $30 a year; there is a rail fence round the garden; John Wack lived with the old man at the time Esther did."

Philip Haas.  " In the fall of the year Henry Romig asked me if I had engaged to do much work next summer; he said he had a notion to build a house; I asked him where; he said he had a lot; I asked him if he would move on or into himself; he said he would build it for himself and Mrs. Wack to live in; he said he was an old man, and Mrs. Wack would have a home and a living after he was dead; this was seven or eight years ago; I cannot tell if he said what he would do with the house when he was dead; Henry Romig paid my partner for my work."

Philip Romig.  " I know that Mrs. Wack worked for Henry Romig after the death of his first wife; he was a widower about

thirteen years; Mrs. Wack kept house for him; Henry Romig paid for the mason-work to the house; Wack was also there; Wack and wife have no children."

The defendant then read in evidence the following entries from the docket of the court:

> " Henry Reichart
>          *v.*                    }          Aug. 7, 1830.   No. 43.
>   John Wack.

Summons in ejectment. " Summoned." Oct. 16, 1830, Arbitrators appointed. Oct. 24. 1830, Report in favour of defendant filed. (Settled, and costs paid, $14 84.)"

THE COURT, in their charge to the jury, after stating the provisions of the act of 1772, " for the prevention of frauds and perjuries," said :—" This law was enacted to prevent fraud, and is not itself to be made an instrument of fraud.   The courts have held, that where a contract has been so far executed that it would be unjust to refuse to carry the contract into full effect, its terms should be enforced.   In those cases the contract must be so far executed that the parties cannot be placed in the situation they were in, before the contract was entered into.   The part performance of the contract must be pursuant to the contract, and in execution of the same.   If the party in execution of the contract, enters upon the land and makes large improvements, the court would consider that as done which ought to be done, and bind the parties to the execution of the contract, to prevent fraud and injustice.   Then on other principles, the party calling for the execution of the contract, must make out a case to the satisfaction of the jury.   The contract must be established, and the performance which is relied upon must be proved.   The same principles will apply to a gift from a parent to a child.   What proof have you of a gift?   Are you satisfied from the evidence that the father did give this land for her life, to the wife of the defendant? That he designed to give it to her by will, or in some other way, will not suffice; had he at any time given the land to her?   If the evidence establishes this fact to your satisfaction, then the defendant would so far have made out his case.   We leave you to judge of this fact from the proof.   You will recollect that but one witness speaks of his having given her the land; that is Shaffar.   It is shown that this witness, when examined before the arbitrators, testified that the old man also spoke of giving the wife of the defendant this land by his will.   Is there any thing in this case that makes it a fraud on the defendant and his wife, to withhold from them the land? The fraud on the defendant and his wife, and their equity, must arise out of the alleged gift, and what they have done in consequence of it.   That she did not get justice done her in the division of her father's estate has nothing to do with this case.   The jury

(Wack *v.* Sorber.)

are to find the facts in the case, and return their verdict, being governed by the charge of the court in matter of law. This you are bound by your oaths to do. What then is the particular equity or fact of the defendant in this case. All the expenditure of any extent is on a stable, of about $20 or $30. The property it is proved would rent for $30 per year. They have occupied it for seven years. Would this improvement or expenditure render this gift valid, where the defendant is more than compensated by the occupancy for all improvements made, if the testimony is believed? and there is no contradiction in this point. To take the case out of the statute we have read to you, a particular equity must be shown. If the defendant has been fully compensated, the specific execution of the gift would not be decreed. Then no injury would be done to the donee, no fraud practised upon the defendant which does any injustice, that would take the case out of the statute. If you believe that no improvements have been made beyond $20 or $30, and that the property was worth $30 a year, and that the defendant occupied the same for seven years, then in point of law the case would not be taken out of the operation of the statute, and the plaintiff would be entitled to your verdict."

The jury found for the plaintiff; and the defendant having removed the record, assigned the following errors:

" 1. The court erred in charging the jury, that if the parties entered, and made large improvements on the land, the court would consider that as done which ought to be done; thus leaving the jury to infer that large improvements alone made the gift valid.

2. The court misdirected the jury, in stating that but one witness speaks of his (the father) having given her the land; that is Shaffar. It is shown that this witness, when examined before the arbitrators, testified that the old man also spoke of giving the wife of the defendant this land by his will.

3. The court erred in charging the jury, that if they believed that no improvements had been made beyond $20 or $30, and that the property was worth $30 a year, and that the defendant occupied the same for seven years, then in point of law, the case would not be taken out of the operation of the statute, and the plaintiff would be entitled to their verdict.

4. There is in writing, and given in evidence in the cause, a declaration of trust, under the hand and seal of Henry Romig, leaving to the defendant's wife a life-estate in the land in question, of which no notice was taken by the court in their charge to the jury.

5. The court erred in not charging the jury that the record in the case of Reichart *v.* Wack, was conclusive against Reichart, and all claiming under him."

Mr. *Gibbon,* (with whom was Mr. *Mallery,*) for the plaintiff in

(Wack *v.* Sorber.)

error, cited *Syler* v. *Eckart*, (1 *Binn.* 378); *Eckart* v. *Eckart*, (3 *Penn. Rep.* 332, 354); *Stewart* v. *Stewart*, (3 *Watts,* 255); *Eckart* v. *Mase*, (3 *Penn. Rep.* 364); *M'Farlan* v. *Hall*, (3 *Watts,* 37); *Moore* v. *Kline*, (1 *Penn. Rep.* 129.)

Mr. *Porter*, for the defendant in error, was stopped.

PER CURIAM.—The law of the case was fairly stated. There was scarce sufficient evidence of a contract to be left to the jury. But, permitting them to find a parol gift, if they should think proper, they were directed to inquire whether, as an inducement to expenditure, the gift had been, in fact, a prejudice to the donee. This put the cause on its true point. The improvements, as they are called, were at most equal in value only to a year's rent, and the donee had the premises five years. Beside the improvements were not such as added to the permanent value of the land, consisting, as they did, in repairs of fences, and the erection of a shed for a cow-stable—expedients for present enjoyment, which can never be resorted to for an equity. These attempts to turn an experimental investiture of possession into a sale or gift executed, are of such repeated occurrence, as to require the courts to hold a strict hand over them. There was nothing here to justify the inference of a gift in the first instance, or to take it out of the statute of frauds, if there had been one.

Judgment affirmed.