## LOWRY *vs.* TEW.

The principle upon which courts of equity hold that a part performance of a parol agreement respecting land is sufficient to take a case out of the statute of frauds, is that a party who has permitted another to perform acts on the faith of such an agreement, shall not be allowed to insist that the agreement was invalid because it was not in writing, and that he is entitled to treat those acts as if the agreement in compliance with which they were performed had not been made.

Taking possession of land under a parol agreement, and in compliance with the provisions of such agreement, accompanied by other acts which cannot be recalled so as to place the party taking possession in the same situation that he was in before, has always been held to take such agreement out of the operation of the statute of frauds.

Although a party who has gone into possession of premises under an agreement to purchase the same is, at law, a tenant at will to the holder of the legal title, yet if he is in under a written agreement, made by the owner, to sell and convey the prem-

Lowry v. Tew.

ises to him, or under a parol agreement which has been so far consummated as to entitle him to a specific performance; he is in equity considered the owner of that title for which he contracted; and which the vendor is able to give him. And if that title is an equity of redemption, he has the same claim to redeem, except as against bona fide purchasers without notice of his equitable rights; as if the equity of redemption had been conveyed to him at the time when his equitable rights accrued under the contract.

It is a general rule of equity pleading that a defendant who claims protection as a bona fide purchaser without notice, must deny such notice although it is not distinctly charged in the bill.

THIS was an appeal from a decretal order of the vice chancellor of the eighth circuit, overruling a demurrer to the complainant's bill. The object of the bill was to redeem a farm, of about 203 acres of land in the county of Chautauque, from a mortgage, and from a foreclosure and sale under the same.

The bill stated, in substance, that in June, 1833, J. Sherman, being the owner of the farm in question, mortgaged it to The New-York Life Insurance and Trust Company, to secure the payment of $1000 and interest. Three judgments were afterwards recovered against Sherman, which became liens upon his equity of redemption in the farm; one in favor of A. Varney of about $250, which was the oldest lien upon the farm, and two others, amounting together to about $1000, both of which belonged to the complainant N. A. Lowry, on and previous to the first of March, 1843. In January, 1843, the farm was sold upon an execution issued on the oldest judgment, and was purchased by Varney, the plaintiff in that judgment. And in March, 1843, Sherman, for a valuable consideration, bargained and sold to the complainant all his right, title and interest in the farm subject to the mortgage and judgments, &c. and his equity and right of redemption, and surrendered the possession thereof to him, with the exception of a portion of the farm house. There was no written agreement, but Sherman agreed to give the complainant a deed of the premises, to carry into effect the verbal agreement. And on the 14th of the same month the complainant rented the premises to a tenant, upon shares; who moved into the farm house on that day, and continued in possession until after the sale upon the decree of foreclosure as

hereafter mentioned. But the deed from Sherman for the farm, in pursuance of such agreement, was not made out and executed until about the last of May, 1843, when it was duly acknowledged and recorded.

In April, 1843, The New-York Life Insurance and Trust Company filed a bill in chancery to foreclose the mortgage to the company; making the mortgagor and his wife, and Varney who had bid off the equity of redemption at the sheriff's sale under his judgment, the only defendants in the suit; and a notice of the lis pendens was duly filed on the 25th of the same month. A final decree of foreclosure and sale was entered in that suit, and the premises were sold by the master, under such decree, in September, 1843, and were purchased by W. H. Tew, the defendant in this suit, for the price or sum of $2034,50. The master conveyed the premises to the purchaser, and brought the surplus moneys, amounting to $842, into court. Out of such surplus moneys Varney was paid the amount due to him upon his purchase at the sheriff's sale; and the complainant applied for and received the balance, as a judgment creditor having liens upon the equity of redemption.

The bill also charged, that at the time of the master's sale, Tew, the defendant in this suit, knew that Lowry, the complainant, was in possession of the mortgaged premises, by his tenant. And the complainant had offered to redeem the premises, by paying the defendant the amount of his bid at the master's sale, and interest thereon, and his expenses, upon being indemnified against a mortgage given to The New-York Life Insurance and Trust Company upon the premises for a part of the purchase money on the master's sale; or to take the premises, subject to the payment of that mortgage, and to pay the defendant the balance of his purchase money and interest. But the defendant refused to permit him to redeem the premises.

*S. Matthews*, for the appellant. The parol contract which the complainant sets up created no interest in the land. (2 *R. S.* 69, § 6.) This section declares in express terms that "no estate or interest in land shall be created," &c. except in the

Lowry v. Tew.

manner specified in that section. Section 8 declares the parol contract to be void. In the revisers' notes to the 6th section the person making a parol contract, and taking possession under it, is called a tenant at will. This was the necessary consequence. Lowry then had no interest in the land, but was a mere tenant at will. It will not be pretended that a tenant at will has a right to redeem. The tenancy at will terminated when Lowry took a deed, 29th May, 1843, more than 30 days after filing notice of lis pendens. There was no such change of possession as would be notice to the complainants in the foreclosure suit. The mortgagor still remained in the house on the premises. Lowry's cattle and sheep were on the premises before the parol agreement. The only pretence of a change of possession was, that the son of the mortgagor went into the house on the farm, with his father, and worked the farm on shares. The mortgagor still living on the place, the presumption arising from the appearances would be, that the son was occupying under his father. Lowry's cattle and sheep being on the premises was no change, for they were there before the parol contract. The defendant was an innocent purchaser at the sale, and Lowry was present at the sale and did not give any notice of his intention to redeem, or that he had any rights that were not foreclosed. All the notice that the defendant had is set forth between folio 23 and 24 of the bill. The fact that Lowry was in possession, by his tenant and cattle and sheep, on the day of sale, and that the defendant knew it, amounts to nothing. Suppose he did know that Lowry was in possession by virtue of his purchase, that could only relate to the legal purchase when he took his deed. He was informed by the record of the deed. Lowry does not say that he told him or notified him, but that "he was informed." No particular kind or mode of information being expressed, the presumption is that it was the legal information obtained from the record, and this information notified the defendant that Lowry had no right to redeem; his deed being subsequent to the filing of the notice of lis pendens. Lowry stood by and saw the defendant purchase the land, and did not set up any right or claim different

from what the record showed. This state of facts, as detailed in the bill, makes out against Lowry an *estoppel in pais*, and forever precludes him from redeeming, if he before had the right. (*Cowen & Hill's Notes to Phil. Ev. vol.* 1, *p.* 207 *to* 209. *Dezell* v. *Odell*, 3 *Hill*, 215.) It was no part of the parol agreement that Lowry was to have possession. After making the parol contract he says the mortgagor surrendered up to him the possession. The power reserved to the court of chancery by the 10th section of the statute of frauds, does not affect the operation of the 6th section, so as to make a parol agreement create a present interest in the land. The statute is positive and unequivocal in its terms, and prevents the creation of any interest whatever, either legal or equitable. There is no more foundation for saying that it created an *equitable* interest, than a *legal* interest. It excludes *any interest*. The vice chancellor bases his decision upon a remark of Chancellor Kent. (4 *Kent's Com*. 162.) The words there used are, "Every person who has an interest in, or a legal or equitable lien upon, the lands," has the right to redeem. This is not disputed, and it seems a little strange that he should cite an authority so exactly against his position, as the only foundation to rest it upon. Chancellor Kent does not say a legal or equitable *interest*. It is not pretended that Lowry's claim was a legal or equitable *lien*. I know of no authority allowing the owner of a mere equitable interest in land to redeem. It is not, however, conceded that Lowry had even an equitable interest in the land. An executory contract in writing, does not create any interest in lands. The 6th section of the statute declares that nothing short of a conveyance creates an interest in land. In this view of the case, if Lowry's parol contract had been reduced to writing, it would not have authorized him to redeem, for the reason that such a contract does not convey an interest *in presenti*. (*Jackson* v. *Moncrief*, 5 *Wend*. 26.) The object of the 10th section of the statute of frauds was to permit the court of chancery to compel a specific performance of agreements where there had been part performance; but no power is there given to the court to say that a parol or written contract creates an interest

Lowry *v.* Tew.

in land, when the statute has expressly declared that it shall not create any interest in land. The complainant's bill does not show such a contract as the court of chancery would enforce specifically. The giving possession formed no part of the contract. The complainant's bill does not show that any part of the contract was performed prior to the giving of the deed. When the deed was given, it put an end to all power of the court of chancery to enforce performance, if it had before existed; so that the 10th section of the statute becomes entirely nugatory, so far as this case is concerned. The complainant acquired no right to the crops on the ground at the time of the master's sale, nor to the use of the premises after the sale. Suppose he had a right to redeem, that gave him no right to the use of the land until he perfected his redemption. He made no attempt to redeem until a year after the sale.

*A. Tuber*, for the respondent. The complainant has a right to redeem as a purchaser of the equity of redemption previous to the filing of the bill to foreclose; and he is not barred by the decree foreclosing the equity of the mortgagor, as he was not a party to that suit. The complainant purchased the premises of the mortgagor, by parol, previous to the commencement of the foreclosure suit, and this purchase was subsequently consummated by a deed of conveyance from the mortgagor to the complainant. This purchase by parol, or contract of purchase, would be decreed to be specifically performed by the mortgagor, (the vendor,) as it was made upon "a good and valuable consideration," and was immediately followed by part performance, which takes the case out of the statute of frauds. The complainant entered into possession of the premises immediately after his parol purchase, and was in possession by his tenant when the foreclosure suit was commenced. The complainant's cattle, sheep, and stock were on the premises when he purchased, and his tenant went to work, &c. Possession has always been held a part performance which will take a case out of the statute. The complainant was in possession at the time the foreclosure suit was commenced, and this was notice to the

mortgagees, the complainants in that suit, and they should have made the complainant in this suit a party, in order to bar his equity. The complainant has a right to redeem simply to protect his interest in the crops raised by him and his tenant, and to protect himself from the claim made for the value of the crops.

THE CHANCELLOR. Upon the facts stated in this bill it must be presumed that Lowry, the complainant, was in the open and notorious possession of the mortgaged premises, by his tenant, at the time the proceedings to foreclose the mortgage were instituted. I think also, upon the face of this bill, it appears that the verbal agreement for the sale of the premises had been so far consummated, by a part performance, at the time of the institution of the foreclosure suit, as to give to Lowry an equitable right to redeem the premises from the mortgage as well as from the sheriff's sale. For he had not only taken possession of the premises, in conformity to the terms of the agreement, but had actually rented them for a year upon the faith of that verbal contract of purchase. So that if the vendor had resiled from his contract, instead of giving the deed in conformity with the terms of that contract, it was not in his power to place the purchaser in the same situation in which he was previous to the taking possession under the agreement.

The principle upon which courts of equity hold that a part performance of a parol agreement is sufficient to take a case out of the statute of frauds, is that a party who has permitted another to perform acts on the faith of an agreement, shall not be allowed to insist that the agreement is invalid, because it was not in writing, and that he is entitled to treat those acts as if the agreement, in compliance with which they were performed, had not been made. In other words, upon the ground of fraud in refusing to execute the parol agreement after a part performance thereof by the other party, and where he cannot be placed in the same situation that he was in before such part performance by him. Taking possession under a parol agreement,

and in compliance with the provisions of such agreement, accompanied with other acts which cannot be recalled so as to place the party taking possession in the same situation that he was in before, has always been held to take such agreement out of the operation of the statute of frauds. (*See* 2 *Story's Eq.* § 761, *and the cases there referred to; Keats* v. *Rector*, 1 *Pike's Ark. Rep.* 419.)

It is true a party who has gone into possession of premises under an agreement to purchase the same, is at law a tenant at will to the holder of the legal title. But if he is in under a written agreement, made by the owner, to sell and convey the premises to him, or under a parol agreement which has been so far consummated as to entitle him to a specific performance, he is in equity considered as the owner of that title for which he contracted, and which the vendor is able to give him. And if that is an equity of redemption, he has the same claim to redeem, except as against bona fide purchasers without notice of his equitable rights, as if the equity of redemption had been conveyed to him at the time his equitable rights accrued under the contract. This complainant, therefore, should have been made a party to the foreclosure suit, in order to cut off his equity of redemption in the mortgaged premises. And if the complainants in the foreclosure suit, at the time of the commencement of such suit, had either actual or constructive notice of his rights, and if the defendant Tew, at the time of his purchase of the premises under the decree, had such notice of those rights, the equity of redemption was not foreclosed as against Lowry.

The deed from Sherman to Lowry, and which was long subsequent to the commencement of the foreclosure suit, was sufficient to account for the possession of the latter at the time of the master's sale. Such possession at that time, therefore, was not constructive notice to the purchaser of the complainant's equity. But it is a general rule of equity pleading that a defendant who claims protection as a bona fide purchaser without notice, must deny such notice, although it is not distinctly charged in the bill. A plea or answer, therefore, denying such

Lowry v. Tew.

notice, appears to be necessary in order to protect the defendant as a bona fide purchaser at the master's sale.

It is alleged by the defendant's counsel that the complainant was present at the master's sale, and concealed from the bidders at such sale the fact that he claimed that the foreclosure was invalid, as against him, because he had an equitable right to the premises, subject to the incumbrances thereon, and was in possession, by his tenant, at the time the foreclosure suit was commenced. That fact, however, if it is a fact, does not appear in the bill. But if set up and insisted on in the defendant's answer, and established by the proofs, in connection with the fact that Lowry subsequently claimed and received the surplus moneys as a judgment creditor of the owner of the equity of redemption, I should not hesitate to declare such silence a fraud upon the bidders at the master's sale, and intended to increase such surplus for his own benefit; and that he had no equitable claim to relief as against the purchaser at such sale.

This is a question, however, which does not properly arise upon the demurrer, but must be brought before the court by answer to the bill. The order of the vice chancellor overruling the demurrer was therefore right, and must be affirmed with costs.

It appears by the bill that the defendant had given a mortgage to The North American Trust and Banking Company for a part of the amount due them out of the proceeds of the sale. And I am inclined to think they should have been made parties to this bill, to redeem the premises on the ground that the foreclosure and sale were invalid as against him. But as that objection was neither specified in the demurrer, nor urged *ore tenus* upon the argument before the vice chancellor it cannot benefit the defendant on this appeal.