## Merithew *vs.* Andrews.

Previous to the purchase of mortgaged premises, by C. at a foreclosure sale, it was agreed by parol, between him and M. that M. should have the premises conveyed to him, upon payment to C. of the amount of his bid, with interest and costs. M. was then in possession of a portion of the premises, which he held under a contract to purchase, from a former owner. After C. had purchased, this parol agreement was renewed, or reaffirmed, by parol, and C. gave up to M. the possession of the residue of the premises, and authorized him to keep possession and rent the same. M. accordingly rented a portion of the premises, to a tenant, and made payment according to his parol agreement, amounting to more than one third of the purchase money, which C. accepted and received. *Held* that such possession and part payment took the parol agreement out of the operation of the statute of frauds; and that the agreement could have been enforced, specifically against C.

*Held, also,* that M. being thus in possession, under a contract rendered valid, and capable of being enforced, by part performance, it was not in the

Merithew *v.* Andrews.

power of C. by an agreement with a third person, to which M. was not a party, to take away M.'s rights under his contract, or to burden them with new and more onerous conditions; especially where such third person was fully informed at the time of his purchase, of the agreement with M. and what had been paid, under it.

Where one is in possession of premises, and exercising acts of ownership, a party coming to purchase is bound to take notice of his rights, whatever they may be; and the law will oblige him, if he takes the premises at all, to take them subject to those rights.

A purchaser of land, having actual or constructive notice of the equitable rights of a third party, under a contract with the immediate vendor of such purchaser, is bound to respect those rights, and may be decreed to perform the contract on the part of his vendor, upon the performance, or tender of performance, thereof by such third party.

APPEAL from a judgment entered upon the report of a referee. The relief prayed for, in the complaint, was that the defendant might convey the premises therein described, to the plaintiff; or, in case of his inability to do so, that he pay damages to the amount of $500, with costs. The following facts were found by the referee viz: That on the 14th day of November, 1855, J. D. Tallman conveyed to Perry Weed, by deed executed by himself and wife, certain real estate in the town of Castile, county of Wyoming, New York, about six acres, on which there was a dwelling house, saw mill, and water power, and Weed executed a mortgage to Tallman to secure $300 of the purchase money, and went into possession of the premises. In March, 1856, Weed conveyed the same premises to Wm. M. Wallace, subject to the mortgage still held by Tallman, on which no payments had been made, and Wallace went into possession. In March, 1859, Wallace conveyed to plaintiff a part of the premises, embracing about one and one half acres, on which is the saw mill, and let him into possession. Before conveying to the plaintiff, Wallace had paid $254.50 on the Weed mortgage, leaving the balance unpaid, and the plaintiff in his purchase of Wallace assumed the payment of the sum unpaid on the mortgage, in part payment of his purchase, and in further payment gave Wallace two promissory notes of $50 each,

payable in cash, and one of $50, payable in sawing. In October, 1858, the defendant obtained a judgment in the supreme court, against Wallace, and had the same docketed in Wyoming county, for $527.69 damages and costs, which has not been paid, and the defendant is the owner of the notes given by the plaintiff to Wallace as above. The $50 note payable in sawing has been paid in part, if not in full; but the two cash notes have not been paid. The plaintiff failed to pay the mortgage assumed by him, and in January, 1861, it was placed in H. Chalker's hands, he being an attorney of this court, for foreclosure, by the holder, Tallman. Chalker immediately commenced proceedings for foreclosure in the supreme court; and a judgment of foreclosure was obtained in April, 1861, the amount then due being $105.61, and costs of foreclosure, $60.20. Before the foreclosure the plaintiff saw Chalker, and the latter agreed in case the premises were sold on the mortgage, to purchase and take title, and give the plaintiff the right to redeem or have title to the whole premises on paying the sum they should be bid off at, with interest and all costs. The plaintiff agreed to this, and the premises were thus sold. At the sale, which took place June 20, 1861, the plaintiff was present, and the agreement with Chalker was renewed; Chalker saying he would purchase the land and convey to the plaintiff, or the first man who would pay him his bid, interest and costs. Chalker purchased the premises for $180.75 and took the title. After the sale the agreement between him and the plaintiff was reaffirmed, though it was never reduced to writing but always stood in parol. The plaintiff continued in possession of the land he purchased of Wallace, and on the 30th of November, 1861, Chalker gave him a paper writing, saying:

"Philander L. Merithew has permission to take possession of the house and place recently occupied by Wm. M. Wallace at St. Helena, and which are part of the premises I bid off on foreclosure, and to keep possession and rent the same."

This paper was signed by Chalker. The plaintiff took .

Merithew *v.* Andrews.

possession of this part of the premises immediately on receiving this paper. After the purchase by Chalker, the plaintiff paid him various sums to apply on the judgment of forelosure, until the sum unpaid of principal, interest and costs, was on the 9th of December, 1861, reduced to $108.25. The defendant herein was not made a party to the foreclosure, and on the 9th day of December, 1861, he called on Chalker and stated that his judgment was still a lien on the premises, and proposed to purchase the land. Chalker told him of his agreement with the plaintiff, and that he was in possession and had paid him money since the sale on his bid, and stated to the defendant that the sum still unpaid was $108.25; this sum the defendant proposed to pay to Chalker and take a contract for a deed of the premises, and he did then pay to Chalker $108, and Chalker gave him a writing in these words:

"Received of Lansing Andrews pay in full for the St. Helena property, which I am to deed to him or his appointee, on request. Andrews is to give Merithew thirty days to redeem the property provided he goes directly to repairing his part of dam, or secures the pay therefor, and also provided that within the 30 days Merithew secures the Wallace note of $100 and interest, and also secures the Wallace note of $50 or thereabouts and which is part paid and is payable in sawing. If Merithew performs the above he is to have a deed from Andrews for his part of the property. Dated Dec. 9, 1861. (Signed,) H. CHALKER."

(Indorsed) "Lansing Andrews, or his agent, is entitled to the possession of the house Wallace recently occupied, and which Merithew has lately taken possession of.
December, 9, 1861. (Signed,) H. CHALKER."

This paper was delivered to the defendant. At the same time Chalker wrote and delivered to the defendant, to send to Merithew, a writing as follows:

"M. Merithew: Mr. Andrews has paid me the balance on that property ($108,) and agrees that you have 30 days to

pay that amount and interest to him, and also to pay, or secure the Wallace note of $100 and interest, and to pay or secure the Wallace $50 payable in sawing, and which is part paid, and if you go right about repairing your part of the dam, and do the above, Andrews will deed to you the part of the property you were to have. Decide what you will do, and let Wallace know.      (Signed,)      H. CHALKER. Nunda, December 9, 1861."

Subsequent to this and before December 24, 1861, Chalker conveyed the entire property to the defendant absolutely. On the 24th of December, 1861, the plaintiff tendered to the defendant $109 in gold and silver, and demanded of him a deed of the entire premises. The defendant refused to convey the entire property, but offered to convey by quit-claim deed the portion purchased by the plaintiff of Wallace, if the plaintiff would perform the conditions imposed upon him by Chalker in his contract with the defendant. This the plaintiff refused to do, and gave the defendant notice that the money tendered would be deposited with Chalker for him. The plaintiff immediately deposited the money with Chalker for the defendant and Chalker informed the defendant of the fact. The money has since remained in Chalker's hands on deposit. The referee's conclusions of law were that in the negotiations between Chalker and the defendant for a sale of the land, the notice to the latter of the plaintiff's rights and equities under his agreement with Chalker were merged in and confined to the written agreement made by Chalker, and that the referee could not look beyond that instrument for such notice; and that the defendant's liabilities to the plaintiff under his agreement with Chalker are limited to and defined by that instrument. That the contract between Chalker and the plaintiff, which is sought to be enforced in this action, differs very much from that made by Chalker with the defendant in respect to what the plaintiff was to have, and the terms and conditions upon which he was to

have it. That the liabilities assumed by Chalker in his contract with the plaintiff, are broader and different from those assumed by the defendant with Chalker ; that the defendant did not take upon himself all the liabilities of Chalker and can not be compelled to perform them in this action. And as a further conclusion of law, he found that the contract between Chalker and the plaintiff, being for the sale of lands and not reduced to writing, was void by the statute of frauds, and could not be enforced in this action. He therefore reported that the plaintiff was not entitled to the relief he asked, against the defendant in this action, and that the defendant must have judgment.

Judgment being entered, upon the report, the plaintiff appealed.

*H. Chalker,* for the appellant.

*Hastings & Bingham,* for the respondent.

*By the Court,* JOHNSON, J. Upon the facts of this case, as established by the findings of the referee, it is entirely clear that neither of his conclusions of law can be sustained.

1. The contract between the plaintiff and Chalker, at the time the defendant purchased, and took his conveyance of the premises from Chalker, was not void within the statute of frauds, but was a perfectly valid and binding contract, which the plaintiff could have enforced against Chalker. It is established, by the finding, that before Chalker purchased in the premises, at the sale on the mortgage foreclosure, it was agreed by parol, between him and the plaintiff, that the latter should have the premises conveyed to him, upon payment to the former, of the amount of his bid, with interest and costs. The plaintiff was then in possession of a portion of the premises which he held under a contract to purchase, from a former owner.

After Chalker had purchased and perfected his title, his

parol agreement was renewed or reaffirmed by parol, and Chalker gave up to the plaintiff the possession of the residue of the premises, and authorized him to keep possession and rent the same. The plaintiff, after possession was given up to him, rented a portion of the premises to a tenant. The plaintiff being thus in possession of the entire premises, proceeded to make payments according to his parol agreement, which Chalker accepted and received as payment. The amount of the bid, including the costs of the foreclosure which the plaintiff agreed to pay, was $180.75. Of this, at the time of the defendant's purchase, the plaintiff had paid enough to reduce the amount remaining unpaid to $108.25. The plaintiff being thus in possession of the entire premises in accordance with his agreement, and having paid more than one third of the purchase price agreed upon, his parol agreement had been taken out of the operation of the statute of frauds, and could undoubtedly have been enforced against Chalker. (*Lowry* v. *Tew,* 3 *Barb. Ch.* 407. *Malins* v. *Browne,* 4 *Comst.* 402. *Story's Eq.* § 761. 2 *Parsons, on Cont.* 552, 3, 4. *Brown on Stat. of Frauds,* § 465, *n.* 3, *and cases there cited.*)

Authorities might be multiplied on this point; but it is wholly unnecessary, as our statute of frauds expressly saves and reserves from its operation, the right of a court of equity to compel the specific performance of agreements in cases of part performance of such agreements. (2 *R. S.* 135, § 10.) As nothing had been done to rescind or put an end to the plaintiff's agreement, at the time of the conveyance to the defendant it was in full force and binding between the parties to it, and capable of being enforced specifically.

2. The plaintiff being thus in possession under a contract rendered valid, and capable of being enforced, by part performance, the question arises whether it was in the power of Chalker, by an agreement with the defendant to which the plaintiff was no party, to take away the plaintiff's rights under his contract, or to burden them with new and more

onerous conditions.   The referee held that he could, and that the plaintiff's rights under his agreement—conceding it to be in force—were subject to the new burdens imposed in the agreement between Chalker and the defendant, as between the plaintiff and the defendant.

This is manifestly erroneous.   The plaintiff was in possession exercising acts of ownership, and the defendant coming to purchase, was bound to take notice of his rights, whatever they might be.   But in addition to this the referee expressly finds that Chalker informed the defendant fully of the agreement with the plaintiff, and what had been paid under it.

In either case, therefore, the law obliged the defendant, if he took the premises at all, to take them subject to the plaintiff's rights.   His rights existing, and in force, could not be destroyed, or in any respect injured, without his consent. The limitations which Chalker and the defendant undertook to impose were wholly inoperative as against him.

The purchaser of land in all such cases, having either constructive, or actual notice, is bound to respect the equitable rights of third persons, and to carry out the contract, upon the performance or tender of performance by such third person. (*DeRuyter* v. *The Trustees of St. Peter's Church*, 2 *Barb. Ch.* 555.   *Champion* v. *Brown*, 6 *John. Ch.* 402, 403, *and cases there cited.   Story's Eq.* § 784.   *Tuttle* v. *Jackson*, 6 *Wend.* 213.)

It is now claimed on behalf of the defendant, that his judgment against Wallace was a lien upon the premises which was not affected by the foreclosure, and that his purchase from Chalker was in the nature of a redemption from the mortgage foreclosure and sale, and thus a protection against the plaintiff's contract.

No such question appears to have been raised upon the trial or decided by the referee.   His decision was placed upon other grounds entirely.   It is quite apparent, however, that no such thing as a redemption was contemplated between the defendant and Chalker.   The defendant only paid the balance

of the bid remaining unpaid by the plaintiff, and neither paid nor offered to pay the plaintiff the amount advanced by him. But in addition to this, the receipt and memorandum which the defendant took from Chalker at the time of the conveyance, shows clearly that it was a purchase upon a distinct understanding that he was to convey to the plaintiff, upon being reimbursed his purchase money, and payment by the plaintiff of certain promissory notes given by him to Wallace. The design of the defendant, in the transaction, obviously was to place himself in such a position as to enable him to compel the plaintiff to pay these notes as a condition to his right to obtain a title under his agreement with Chalker. This was what he insisted upon when the plaintiff tendered performance of his contract with Chalker. But even then he only proposed to convey a portion of the premises, not offering even to perform the agreement he had made at the time of his purchase. This scheme to make a new contract for the plaintiff without his knowledge or consent can not be allowed to prevail. It is quite clear that the defendant has no equities superior to those of the plaintiff, which should absolve him from his obligation to carry out this contract. If the plaintiff was under obligation to Wallace to pay off the mortgage and prevent its foreclosure and a sale of the premises, he was under no duty or obligation whatever to the defendant to do so, for the benefit of his judgment. The defendant has not connected himself in any manner with the contract between the plaintiff and Wallace. The transfer of the notes to him gave him no interest in that contract; and his judgment was subject to the plaintiff's rights under it, being subsequent in point of time. The notes in the defendant's hands are clearly no equitable lien upon the premises, as against the plaintiff.

There is no ground, therefore, on which the defendant can be excused from the performance of this agreement. Having necessarily assumed the duty of its performance, when he made his purchase with a full knowledge of the plaintiff's

rights, he should now be decreed to perform it, inasmuch as the plaintiff is ready and willing and offers to perform on his part. The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[Monroe General Term, September 5, 1865. *Johnson, E. D. Smith* and *J. C. Smith,* Justices.]