JANE E. WALTON

*v.*

GEORGE W. WALTON *et al.*

1. CHANCERY—*effect of sworn answer as evidence.* Where an answer in chancery is required to be under oath, and it is responsive to the bill, it must be taken as true, unless overcome by evidence amounting to the testimony of two witnesses.

2. SAME—*when answer sets up new matters.* In a proceeding for the partition of land, an allegation in an answer that the petitioner or complainant had promised to give a certain interest in the land to a brother under whom the defendant claimed, and that such brother made valuable improvements on the land, upon the faith of such gift, is not responsive to the petition, and must be sustained by affirmative proof.

3. GIFT—*promise to make, not enforcible.* A mere promise to make a gift of the promisor's interest in land, without consideration, is not binding on the party making it, especially when the use of the property is ample compensation to the promisee for his improvements, and taxes paid by him.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Mr. E. F. ALLEN, for the appellant.

Mr. JAMES FRAKE, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a petition for partition, filed in the circuit court of Cook county, by George W. Walton and Thos. H. O. Walton, against Jane E. Walton, on the 2d day of July, 1872, for the purpose of dividing a certain tract of land in Cook county, containing 80 acres.

It is alleged, in the petition, that George W. Walton is the owner in fee of an undivided eighteen seventy-second of the land, and that Thos. H. O. Walton is the owner in fee of an undivided twenty-one seventy-second thereof, and that Jane E. Walton petitioners believe to be the owner in fee of thirty-three seventy-second thereof. The manner in which the parties derive title is fully set out in the petition.

The defendant filed her answer under oath, the petition not having waived the oath, replication was filed, the cause referred to the master, and proof taken. The master, in his report, found the land owned as stated in the petition. Exceptions were filed to the report of the master, and overruled, and decree entered in conformity to the prayer of the petition.

The facts, as shown by the record, so far as it is material to state them, are these: Thomas Walton, in 1843, died intestate, seized of the land in controversy. He left a widow and nine children, who were his only heirs, among whom were the petitioners, George W. Walton and Thos. H. O. Walton, and a son, Eldridge G. Walton, who was the husband of defendant.

In 1865, one of the children, Phebe J., died intestate and unmarried, and without issue.

On the 20th day of September, 1856, Eldridge G. Walton conveyed his one-ninth interest in the land to Geo. W. Walton, but he continued to reside upon and receive the rents and·profits of the land up to the time of his death, paying the taxes and making some improvements.

In 1863, Eldridge G. Walton purchased of four of the heirs their four-ninths interest in the premises. George W. Walton bought out a portion of the heirs, and, in 1872, Thos. H. O. Walton purchased the remaining interests in the land.

On the 10th day of February, 1869, Eldridge G. Walton died testate, and, by his last will and testament, he gave to the defendant all his interest in the land.

It is alleged, in the defendant's answer, that, in the year 1860, Thos. H. O. Walton promised, and agreed to and with Eldridge G. Walton, that he would give him his interest in said premises, being an undivided one-ninth, and, on the faith of such promise, he made valuable improvements on the premises; and this is the only question in controversy in the case.

It is insisted by the defendant that, her answer being under oath, in which she sets up this gift, and not having been dis-proved by two witnesses, on that ground she is entitled to recover.

It is no doubt true, that, where the answer is required to be under oath, so far as it is responsive to the bill, and fairly meets and responds to the allegations of the complainant, it must be received as true, unless it is disproved by evidence amounting to the testimony of two witnesses. *Stouffer* v. *Machen*, 16 Ill. 553.

But this fact set up in the answer, that Thos. H. O. Walton had promised to give his one-ninth interest in the land to Eldridge G. Walton, and, in consideration thereof, improvements were made, is not responsive to any allegation of the petition, but is new matter, and must be sustained by affirmative proof by the defendant. 2 Story Eq. Jur. 1528–9. *Cummins* v. *Cummins*, 15 Ill. 34; *Lynn* v. *Lynn et al.* 5 Gilman,

622. It is, however, insisted that, independent of the answer, the proof establishes the fact that this one-ninth interest in the land was given.

The main proof on this point is the evidence of the defendant. She testifies she knew all about her husband's business matters; that Thos. H. O. Walton wrote to her husband several times that if he would make out the deed, and send it to him, of the interest of Thomas in the premises in question, he would sign the deed and send it back.

This evidence is not sufficient to sustain the position of the defendant. The only reasonable construction to be placed upon it is, it is a mere promise to make a gift, which can not be binding on the person who made it.

Neither is the fact that Eldridge G. Walton made improvements on the land, sufficient to make out a case for defendant.

It appears, from the testimony, that the father of the petitioners was residing on the land, with his family, at the time of his death; that his widow and some of his children, including Eldridge G. Walton, continued to reside there, as a home for the family, until the widow died, in 1859; that, after her death, Eldridge occupied the place as before, and had the entire proceeds thereof, up to the time of his death, in 1869, which largely exceeded any improvements he made, and taxes paid by him.

While he was occupying the land, on the 11th day of October, 1862, he wrote to George W. Walton, and used this language: "I have bought Nelson's share of the place for $100. I am in hopes to buy all the rest, in the next year, but your's. T. H. O. offered me his and Julia's shares for $100 per share."

Again, in 1867, December 1, he writes to Thomas: "You spoke, in your last, about giving me a quit-claim deed of the old place. I feel sorry that you thought that I was begging you to give it to me. You misunderstood me. I merely wanted you to get the other shares in your hands, and hold them; for I thought you never would make me any trouble about them; and again, I thought if you left this

country before I did, or before I could pay for it, you would make me a present of it."

The defendant testifies that she was familiar with her husband's business; but notwithstanding this fact, after her husband's death, and in March, 1871, she writes a letter to N. C. Walton, in which she says: "I feel that you, George and Thomas have an interest in the farm. J. W. Walton and your sisters sold to Ebb, and gave quit-claim deeds."

In the face of these letters, we do not think it can be seriously insisted that a gift was made of this land, and that as early as 1860, as it is the theory of the defense that Eldridge purchased the four-ninths in 1863, from the fact that his brother had previously made him a gift of his ninth.

We are clearly of opinion that this case, both as to the law and the facts, was decided correctly in the circuit court. The decree will, therefore, be affirmed.

*Decree affirmed.*