EMMA A. DEVINNEY, Respondent, *v.* HANNAH M. COREY, Appellant.

*N. Y. Supreme Court, Fifth Department, General Term, April* 12, 1889.

1. *Specific Performance.*—Specific performance of a parol contract to convey land, will not be decreed on the ground of part performance where the party desiring to enforce it has not entered into possession of the land in part performance of such contract.

2. *Statute of Frauds.*—Equity interposes to relieve from the positive requirements of the statute only when to enforce those requirements would work, rather than prevent, a fraud.

3. *Evidence. Section 829.*—In an action to enforce a specific performance of an oral contract to convey land, with a lease to be given thereof to the grantor and his wife for life, the widow of the deceased grantor and the husband of plaintiff are incompetent, under Section 829 of the Code, to testify to the declarations of the deceased made to them, as against his heirs at law.

Appeal from a judgment of special term.

*M. E. & E. M. Bartlett,* for appellants.

*I. Sam Johnson,* for respondent.

DWIGHT, J.—The action was for the specific performance of a parol agreement to convey land, alleged to have been made with the plaintiff by one Wolcott, since deceased, the owner of the land. The plaintiff is a daughter and the defendants are the other heirs-at-law of the deceased. The plaintiff seeks to avoid the statute of frauds, on the ground of part performance.

The premises referred to in the agreement was a parcel of about fifty-two acres, with the home buildings, and known to the family as the homestead place. Adjoining it, the deceased had another parcel of about fifty acres, and adjoining

the homestead, the plaintiff's husband had about fifty acres of land.

The agreement which the evidence tends to establish, and which is, in most respects, that alleged in the complaint, was substantially an agreement for uniting the forces and the resources of the two families during the lifetime of the old people; that the plaintiff and her husband should come to live with her parents at the homestead; that the plaintiff should do the housekeeping, share the household expenses and look after and care for the old people as long as they lived; that she and her husband should put in their fifty acres with the two parcels composing the farm of the deceased (including the farm stock, furnishings and implements of both farms), and should work the whole as one farm, on shares, dividing the products and sharing the expenses equally, and that the deceased should give to the plaintiff a deed of the homestead and take back a lease, of the same, to run to himself and his wife during their lives and the life of the survivor of them.

The agreement seems to have been made about the middle of March, 1885, and, within a few days thereafter, the plaintiff and her husband removed with their effects to the homestead and entered upon the mode of life contemplated by the agreement. The plaintiff assumed the duties of housekeeping and her husband made the maple sugar and put in the spring crops. In the latter part of June of the same year Mr. Wolcott and his wife went to Connecticut for a visit, and there, on the first day of July, the former died. Soon after his death, the widow returned to her home and the same joint occupation of the homestead and the two farms continued down to the time of the commencement of this action.

There was no further performance of the agreement than as above stated, during the lifetime of the deceased. The plaintiff did not take possession of the premises which were the subject of the agreement; it was not contemplated by

the agreement that she should do so, until the death of the last survivor of her parents. As her mother testified, the homestead was to be hers (the plaintiff's), when her parents were done with it; and this result was secured by the provision for a life lease to the father and mother, to be executed at the same time as the deed. Only ordinary repairs were made on the property during the life of the father, and those chiefly by himself; and since his death the improvements have not been of so substantial and permanent a character as to constitute part performance even if they had been made in his life time.

We are unable to find in this narrative the facts requisite to take the case out of the operation of the statute of frauds. The principle has been reiterated until it has become trite, that equity interposes to relieve from the positive requirements of the statute only when to enforce those requirements would work a fraud rather than prevent one. Malins *v.* Brown, 4 N. Y. 403, 410; Lowry *v.* Tew, 3 Barb. Chan. 407; Lobdell *v.* Lobdell, 36 N. Y. 327; Freeman *v.* Freeman, 43 id. 34; Miller *v.* Ball, 64 id. 286. Even payment in full of the purchase money, upon a parol agreement, is not a sufficient part performance to entitle the party to a decree for a deed, because the plaintiff has his remedy by an action at law to recover the money paid. Lowry *v.* Tew, (*supra*); Schoonmaker *v.* Bonny, 6 N. Y. State Rep. 122.

In the former of the two cases last cited, the court says "Taking possession under a parol agreement, and in compliance with the provisions of such agreement, accompanied with other acts which cannot be recalled so as to place the party in the same situation that he was in before, has always been held to take such an agreement out of the operation of the statute of frauds." And in Malins *v.* Brown (*supra*) it was said: "Payment of the purchase money and being let into possession are sufficient." Freeman *v.* Freeman (*supra*) was a case of a parol promise to give a deed accompanied by

actual delivery of possession, and substantial improvements and considerable expenditures made by the promisee with the knowledge of the promisor.

In Miller *v.* Ball (*supra*) possession was taken, and the consideration paid in full. Indeed we think there has been no case in this state in which specific performance of such a contract has been decreed on the ground of part performance, when entry into possession has not constituted a leading feature of the part performance relied upon. In this case, as we have seen, that important element was wanting. The idea of possession by the plaintiff during the lifetime of either of her parents being excluded by the terms of the agreement itself.

The plaintiff's husband testified that, at some time before giving his testimony, at what time does not appear, he had transferred the title to his fifty acres to the plaintiff. But this was not in performance of any stipulation of the agreement in question. There was no suggestion in the conversations between the parties, which are relied upon as constituting the agreement, that the plaintiff should obtain title to her husband's land, but only that " they," the daughter and her husband, should work their land, together with the two parcels of the father's for the common profit of the two families. There is no evidence to show that the plaintiff or her husband was subjected to any sacrifice or considerable expenditure in order to enter upon the proposed arrangement. They were living a few miles distant—the husband earning a living by doing odd jobs of work with his team. There is evidence to the effect that the proposed arrangement was a favorable one for the plaintiff, aside from the prospect of a gift of the homestead; but, however this may have been, she has her remedy at law for whatever loss or damage she has sustained.

We think the case has not been fairly brought within any of the precedents for decreeing a specific performance of a parol agreement to convey land.

Another aspect of the case may properly receive a moment's attention. The evidence in support of the alleged agreement was furnished chiefly by the testimony of the mother and the husband of the plaintiff.

In both cases it consisted largely of the declarations of the deceased made to those witnesses, and, so far, the evidence was manifestly incompetent under section 829 of the Code. Both of the witnesses mentioned were interested in the event of the action ; the mother as a beneficiary under the agreement for a life lease ; the husband as a prospective tenant by the courtesy in the title to be secured to the plaintiff. The rulings upon the defendant's objections to this testimony can be upheld only upon the theory that those objections were not timely, or not sufficiently explicit. We do not look narrowly into the exceptions taken to those rulings, because we think the judgment must be reversed upon the ground previously considered ; but we refer to the question of the admissibility of the evidence mentioned in view of a possible re-trial of the issues involved.

The judgment should be reversed and a new trial granted, with costs of this appeal to abide the final award of costs.

All concur.