HORACE G. YOUNG, as Trustee Under the Last Will and Testament of THOMAS CORNELL, Deceased, Respondent, *v.* SARAH B. OVERBAUGH, Appellant.

*Parol promise to convey land — performance on the part of the promisee — Statute of Frauds — right to a deed — expenditures by the promisee — value of occupation of the premises, as a set-off.*

When, in pursuance, and upon the faith, of a parol promise by the owner of real estate to convey the same, the promisee has taken actual possession and remained in occupation of the premises, and made permanent and valuable improvements thereon, which acts cannot be recalled so as to place the promisee in the same position as before, such performance on the part of the promisee takes the parol agreement out of the Statute of Frauds and entitles him to a specific performance of the promise to convey.

In such a case the value of the occupation of the premises by the promisee is not to be set off against the expenditures made by him thereon and a decree for the conveyance denied because the value of such occupation equals or exceeds the expenditures made; the property becomes his, in equity, at the time of such performance on his part, entitling him to a deed, and the subsequent rental value thereof cannot be charged up against him.

APPEAL by the defendant, Sarah B. Overbaugh, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Ulster county on the 6th day of March, 1893, upon a decision of the court rendered after a trial by the court without a jury at the Ulster Circuit.

*J. Newton Fiero*, for the appellant.

*H. C. Soop* and *A. T. Clearwater*, for the respondent.

HERRICK, J. :

Thomas Cornell, deceased, was the half-brother of the defendant, and prior to the year 1872 was the owner of the premises in question, which are located in Kingston in this State, but since the year 1872 the defendant has been in the possession and actual occupation of said premises under the following circumstances :

The defendant and her husband were residents of Catskill, where her husband was engaged in business, during the year 1869. Thomas Cornell expressed the intention of purchasing a home for the defendant in Catskill, but one was not found there which suited them ; subsequently, in the year 1872, at the request of the said Thomas Cornell, the defendant and her husband went to reside in the city of Kingston, where the defendant's husband engaged in some business, and some time in the year 1872 Cornell, stating that he desired to carry out the idea which he had suggested to the defendant's husband when they were in Catskill, asked the defendant's husband to build a house for her on the premises described in the complaint, for the sum of $4,500, to bring the bills to him and he would pay the same ; he then and afterwards said that the house was for the defendant, built for her, and was hers. The defendant's husband after such conversation, at defendant's request, entered into a contract for the building of a house on the premises described in the complaint, and paid the cost of removing a barn from the property.

The cost of building the house exceeded by about $1,200 the sum of $4,500 named by Cornell. Cornell knew of the contract, and the fact of this additional expenditure of money was communicated to him, together with the fact that defendant's husband had paid the same.

The defendant made other valuable permanent improvements, built a barn, planted fruit trees, put in heating apparatus, etc. Cornell visited the premises at different times and knew that the defendant was improving the property.

The trial court has found that such improvements, as well as the payment of $1,200, were made and expended on the faith of the promise made by Cornell to give the property to the defendant, and that such expenditures and improvements were made for and on behalf of the defendant and at her request, and under her promise to repay her husband therefor.

In the year 1876 the defendant's husband informed Cornell that he had found a business that he thought would be a good thing to go into at Yonkers. Cornell told him that "if you take your wife and move away from the property where you now reside it shall not be hers, as I intended it for her when you first built there, and if you now go away you shall lose it; if you remain I will carry out my design, which was to give it to your wife."

Thereafter the defendant and her husband reported to Cornell that they had concluded to remain in Kingston.

At various times subsequent to the building of the house Cornell spoke of the property to different persons as the property of the defendant. The value of the property is about $8,000. The total amount of money expended by the defendant for permanent improvements, ordinary repairs, taxes, insurance, compensation to defendant's husband for attending to the erection of the house, and the making of repairs, and of other expenses, and the ordinary care and expenditure on property of such a character, from the beginning of the erection of the house down to the present time, is $4,734.26. A fair rental value of the property during the occupancy of the defendant, a period of about twenty years, was $250 a year, aggregating $5,000.

About January, 1890, said Cornell purchased for the defendant and presented to her an undivided one-half interest in and to certain real estate in the county of Ulster, for which he paid the sum of $11,000. But there is nothing in the case to show, or from which we can infer, that it had any relation to the gift or promise in question.

The executor of said Cornell commenced an action in ejectment against the defendant to obtain possession of the property described in the complaint; the defendant denied that the said Cornell, at the time of his decease, was entitled to the premises described in the complaint, and that he was not the actual owner thereof, denied that the plaintiff in the action was the equitable owner or entitled to the possession thereof, and further answering asserted that she was in truth and in fact the equitable owner of said premises and entitled to the possession thereof under an agreement with the said Thomas Cornell, which agreement was set forth in the

answer, and the defendant, in addition to the dismissal of the plaintiff's complaint, asked that he be adjudged and decreed to deliver to the defendant a good and sufficient conveyance to the premises set forth in the complaint.

Upon the trial the facts appeared substantially as herein stated; judgment was rendered against the defendant, awarding to the plaintiff the possession of the premises in question.

The original plaintiff, the executor of Thomas Cornell, died during the pendency of the action, and the present plaintiff was substituted in his place and stead as trustee under the last will and testament of the said Thomas Cornell.

It seems to me that upon the facts as stated the defendant was entitled to the relief asked for in her answer, and that the plaintiff was not entitled to the judgment awarding to him the possession of the premises in question.

"The doctrine was settled at an early day in England, and has been fully adopted in nearly all the American States, that a verbal contract for the sale or leasing of land, or for a settlement made upon consideration of marriage, if part performed by the party seeking the remedy, may be specifically enforced by courts of equity, notwithstanding the Statute of Frauds. The ground upon which the remedy in such case rests is that of equitable fraud. It would be a virtual fraud for the defendant, after permitting the acts of part performance, to interpose the statute as a bar to the plaintiff's remedial right. The acts of part performance, therefore, in order to satisfy this principle, must be done in pursuance of the contract, and must alter the relations of the parties. The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements, and these two combined." (Pom. Eq. Juris. § 1409. See, also, *Lowry* v. *Tew*, 3 Barb. Ch. 407; *Malins* v. *Brown*, 4 N. Y. 404–407; *Dygert* v. *Remerschnider et al.*, 32 id. 629; *Freeman* v. *Freeman*, 43 id. 34; *Pope* v. *O'Hara*, 48 id. 446; *McFadden* v. *Allen et al.*, 134 id. 489.)

The facts in this case show that there has been an actual possession by the defendant, and permanent and valuable improvements made by her, and that such improvements and occupation were upon the faith of the promise made by Thomas Cornell in his lifetime.

There is not much contention as to the rule of law applicable to a case where there is a parol agreement for the transfer of land accompanied by possession and the making of permanent improvements upon it, in reliance upon such agreement, but the decision of the court below and the contention of the respondent is that such rule is not applicable to this case, although such agreement was found, and the occupation of and making permanent and valuable improvements upon the property, upon the faith of such promise or agreement, conceded, because the ground upon which the court exercises its equitable jurisdiction to compel a party to fulfill a parol contract, " really is to prevent a fraud being practiced upon the parol purchaser by the seller, by inducing him to expend his money upon improvements upon the faith of the contract, and then deprive him of the benefit of the expenditure, and secure it to the seller by permitting the latter to avoid the performance of his contract. (*Freeman* v. *Freeman*, 43 N. Y. 34–38.) In this case it appears that the rental value of the premises for the years that the defendant has been in possession of them more than equals the amount of money which she has expended upon them, and, therefore, it is contended that the defendant is not deprived of the benefits of her expenditures because of the use and occupation of the premises by her, and the value of such use and occupation more than compensates for what she has paid out; hence, no fraud is perpetrated upon her by the refusal to fulfill the parol promise made.

I think it has been generally supposed that the longer a person remained in occupation of property, making improvements upon and caring for it as his own, upon the understanding that it was his own, all based upon a promise to convey, the stronger the equitable title of the occupant became, but if the doctrine contended for by the respondent in this case is correct, then the longer the occupation the weaker the equity of the occupant.

The cases to which I have been referred as sustaining the position of the respondent, to my mind fall short of it; the very important element of a gift or promise to convey, which is present in this case, is lacking in all of them.

In the case of *Wack* v. *Sorber* (2 Whart. [Penn.] 387) the court held that there was scarcely sufficient evidence of the contract submitted to the jury; that there was no consideration for it in the first

instance; and that if there were permanent improvements made to the land that the expenditures were trivial in amount, and did not exceed in value the amount of rent for a single year, while the defendant had had the occupation and proceeds thereof for five years; the court also held that there was nothing in the case to justify the inference of a gift in the first instance.

*Walton* v. *Walton* (70 Ill. 142) was a case where the party claiming the parol contract had occupied the premises, and had the entire proceeds thereof, which largely exceeded the improvements made and the taxes paid by him, and the court held that, upon the facts, there was no promise to convey, and none could be inferred from the mere fact of occupancy, payment of taxes and making improvements, where the proceeds and value of such occupation exceeded the expenditures made. The case of *Hickman* v. *Grimes* (1 Marshall [Ky.], 86) is not in point. Grimes brought an action against the Hickmans, father and son, upon a contract which he had made with the son to erect a building, and to have in return therefor a conveyance of certain premises; his claim was that the father had told the son that he would give him a deed of the property in question; the court held that such promise by the father could not be enforced, there being no consideration given for the promise, and nothing done by the son in pursuance of it; that in any event it could not be enforced by the contractor with the son; it was not a promise to the contractor.

In *McMahill* v. *McMahill* (69 Iowa, 115) the court held the evidence to show that the father had intended to make an advancement to his son of the premises in question; that the son occupied them and had the proceeds thereof for some years prior to his father's death, and that, after his death, he took his distributive share of the estate with the other heirs, and the court held that if he had accepted no more of the estate than, with the property in question, would have made him the equal of the other heirs, he might have been entitled to a decree directing it to be conveyed to him; but that equity would not wrong the other heirs by decreeing the enforcement of the promise of the father to convey the property as an advancement when to do so would give him, together with the distributive share he had already received, an undue proportion of his father's estate.

The principle to be extracted from these cases is that where there is no promise to convey, the occupation of land and the expenditure of money thereon will not be sufficient to create an implied promise to convey, and that the value of the use of such premises and the receipt of the proceeds thereof will be set off against any equity created by expenditures made in permanent improvements; but that is very far from holding that where there has been a parol promise to convey, a taking possession under such promise, and the making of permanent improvements upon the property upon the faith thereof that the value of the occupation of such premises for a long series of years, can be set off against the expenditures made, and a decree for the conveyance denied, because the value of such occupation equals or exceeds the expenditures made. The repayment of the money expended in permanent improvements will not always restore the parties to the situation they were in before the promise was made; we have no evidence that it would do so in this case; other things are to be taken into consideration besides the money expended.

Taking possession under a parol agreement, with the consent of the owner, accompanied with other acts, which cannot be recalled, so as to place the party taking possession in the same situation that he was in before, has always been held to take such agreement out of the Statute of Frauds. (*Miller* v. *Ball*, 64 N. Y. 286–292.)

It appears that but for the promise to convey to the defendant, she and her husband would have moved to another place, where he would have engaged in business, where he believed there was a good opening for him, but he was tied down to Kingston by the promise made; the current of their lives was changed by this promise to provide a home, whether for the better or the worse we can only guess; there is nothing certain; we only know that they refrained from taking advantage of what was believed to be a favorable opportunity to engage in business elsewhere, because of their faith in the promise of Thomas Cornell.

For twenty years the defendant has been engaged in making and perfecting a home for herself and family; expenditures were made, perhaps trivial in themselves, care and attention, which cannot be recalled, bestowed upon the premises supposed to be her own, and to be occupied as a family home, and after twenty years of such

·expenditures, care and attention, which one does not ordinarily make or bestow upon the property of others, to force one out of the possession of what has thus been made a home, upon the theory that the rental value of the premises equals, or to a moderate extent exceeds the money actually expended, is not, in my judgment, placing the parties in the same position that they were in twenty years before, and is the perpetration of a fraud.

But it seems to me that there is another view to be taken of the matter; the parol agreement claimed by the defendant, and the expenditures made by her upon the faith thereof, have both been found in her favor by the court, and in equity the property belonged to her from the time of the performance on her part of the things which have been done by her. In equity the property was as much hers from that time forth as if a deed thereof had been executed then; it should have been given then; in equity it was given then. (*Dygert* v. *Remerschnider*, 32 N. Y. 629–647.)

She being, then, the equitable owner, the rents were equitably hers, and cannot be charged up against her. To charge her with the rents as an offset to her expenditures, it seems to me is to beg the whole question, for if she is entitled in equity to a deed of the property, she is also entitled to the rents, or to the occupation thereof in lieu of the rents.

Some weight should be given to the promise to convey; that is the thing that the court is to enforce; it is the foundation of the whole matter, coupled with acts upon the faith of it; it is what gives the court jurisdiction, but by the rule contended for no consideration is given to that at all; the party relying upon a promise to convey or a gift by parol is placed in the same category with the person who voluntarily occupies and improves land without any gift, understanding or agreement; I have been cited to, and have found no authority to sustain such a doctrine, and it does not seem to me that it can be sustained upon principle.

The judgment should be reversed and a new trial granted, costs to abide the event.

PUTNAM, J., concurred; MAYHAM, P. J., concurred in the result.

Judgment reversed and a new trial granted, costs to abide the event.