### ROBINSON v. ROBINSON.

1. A motion made in this court by one of the appellants to have her name stricken from the record as an appellant, refused, the preponderance of the testimony being that she had authorized the appeal.
2. A note signed with a mark may be proved by one who witnessed it, whether named as a subscribing witness or not.
3. In action by the holder of a note against the administrator of the deceased principal debtor, the sureties to the note are competent witnesses to prove its execution by the principal.
4. *Doubted,* whether the signing of a note by a principal debtor and her two sureties, who also signed in her presence, was a transaction between the principal and her sureties, within the meaning of section 400 of the code of procedure.
5. The interest affected which disqualifies witnesses as to transactions with persons deceased, (*Code,* § 400,) means the interest promoted; parties are not disqualified from giving testimony against their interest. Therefore, in action by the administrator for settlement of an ancestor's estate, two of the distributees, parties to the action, may prove the execution by their ancestor, as principal debtor of a note which they signed as sureties.
6. In action brought after the repeal of the stamp act, a note previously executed without stamps, but with no intention of evading the law, cannot be held void.

7. A note held by the administrator of an estate, payable to himself, is not paid by reason of his charging himself with the amount in a settlement of the estate, no payments having been made to him by any of the makers.

8. A sealed note, payable in 1869, cannot be presumed to have been paid where action thereon was brought before 1883.

Before WALLACE, J., Anderson, March, 1883.

The opinion states the case.

*Mr. J. C. C. Featherston,* for appellants.

*Mr. J. L. Tribble,* contra.

March 18th, 1884.  The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.  This was an action by Jesse Robinson, as administrator of his mother, Sarah Robinson, to sell the real estate of intestate in aid of personal property to pay debts and for partition.  The heirs were all parties, viz. : Richard Robinson, James Robinson, Anna Robinson, Mary McDonald, Elizabeth Hinton, Isaac Robinson, Sallie H. Rickets, Nancy M. Smith and R. A. J. Robinson.  The administrator, Jesse Robinson, was also one of the heirs, but his interest in the lands of the intestate had been levied on and sold under execution and purchased by J. C. C. Featherston, and, in respect of his interest, he also became a party.

Under a call for the creditors of the intestate, Sarah, to present and prove their demands, Richard Robinson, one of the heirs, presented a note, of which the following is a copy :

" On or before the 25th day of December, 1869, we, or either of us, promise to pay Richard Robinson, Adm. of the estate of John Robinson, deceased, or bearer, the sum of one hundred and sixty dollars, for value received.  Nov. 28th, 1868.  Witness my hand and seal.

Signed,                    " SARAH $\overset{\text{her}}{\times}$ ROBINSON, [L. S.]
$\phantom{\text{Signed,}\quad\text{" SARAH }}_{\text{mark}}$
                           " JAMES ROBINSON,      [L. S.]
                           " JESSE ROBINSON.      [L. S.]
" To be stamped when had."

Mr. Featherston, representing one of the distributees (Jesse), objected that the note was not proved, because it did not have a revenue stamp upon it, and that it had been paid; or, if not, that it was barred by the statute of limitations.   Jesse and James Robinson proved (subject to objection) that the note was given for rent of land; that they knew their mother rented lands in 1868 from Richard, as administrator of John Robinson, for $160; that they saw her sign the note for that amount; that at the same time they signed as her sureties, and that they never paid the note.   Richard Robinson testified (subject to objection) that the note is his own property and nothing was ever paid on it; that he was administrator of his father, John; that in 1868 he rented the lands of the estate to Sarah Robinson, and for the same she gave him her note for $160; that in the settlement of the personal estate of his intestate, John, in 1870, he accounted for the note and continued to hold it as a debt against his mother.   Jesse, the administrator of Sarah, also testified that the note had been regularly presented to him, as administrator, and he believed it was still due and unpaid.

The master, W. W. Humphreys, Esq., reported that the note was not proved; that the witnesses offered to prove its execution, viz., Jesse and James Robinson were not competent under section 400 of the code; and further, that in a suit against one on a joint obligation, a co-obligor, not sued, is not a competent witness for the plaintiff to prove the execution of the instrument. Richard Robinson, the creditor, excepted to the report, and Judge Wallace reversed it, holding that the note was proved and should be paid.   All the parties acquiesced in this order except, J. C. C. Featherston, Mrs. Hinton and Mrs. McDonald, who appeal to this court on the following exceptions:

1. " Because the presiding judge erred in sustaining the exceptions of Richard Robinson, in so far as holding that Jesse Robinson and James Robinson were competent witnesses under the code to prove the execution of the note alleged to have been made by Sarah Robinson.

2. " Because he erred in holding that the note in question was admissible in evidence, when he should have held that the same was invalid and of no effect for want of a revenue stamp.

3. " Because his Honor erred in overruling the exceptions of J. C. C. Featherston, when he should have sustained the same, and held that Richard Robinson was estopped by his return in the estate of John Robinson from setting up said note.

4. " Because his Honor erred in not holding that if the execution of the note was proved, the same having been accounted for in the estate of John Robinson, Richard Robinson could not recover upon the said note, but his remedy was assumpsit for so much money paid to the use of Sarah Robinson, and such claim was barred by the statute of limitations."

Before the appeal was heard in this court, a preliminary motion was made to strike the name of Mary McDonald from the record as an appellant. In support of the motion, she offered an affidavit that she never authorized the appeal; but Mr. Featherston, the attorney, swears that after the trial below she instructed him " to fight it to the last," and, in confirmation of this, the master, Mr. Humphreys, certifies that when he paid Mrs. McDonald money going to her from the estate of Sarah Robinson in his hands, there was reserved for the purpose of appeal in this case to the Supreme Court the sum of $14.53—her share of the necessary expenses of the appeal. The preponderance of the testimony is that Mrs. McDonald did authorize the appeal, and the motion is refused.

In reference to the note presented by Richard Robinson, the allegation is made that it was not proved; that the alleged signature of the intestate, Mrs. Robinson, by a mark, could not be proved except by an eye-witness, and that Jesse and James, her sons, the only persons who were present, were incompetent witnesses : first, because they were sureties on the note; and, second, because she being dead, and they interested as her heirs and parties to the proceeding, were excluded from proving that they saw her sign it, under section 400 of the code. The first objection cannot be sustained. A note executed by a mark may be proved by one who witnessed it whether he was named as a subscribing witness or not. *Gervais* v. *Baird,* 2 *Brev.* 37 ; *Lyons* v. *Holmes,* 11 *S. C.* 429. The fact that Jesse and James were sureties on the note, did not exclude them from proving that they saw their mother sign it. *Leech* v. *Kennedy,* 3 *Strobh.*

488 ; *Strickland* v. *Stevens*, 12 *Rich.* 78.   In the case of *Leech*
v. *Kennedy*, Judge Richardson said : " Such cases expound the
legal maxim, *nemo in sua lite testificare potest*, in its proper sense,
reason and object, and make the witness offered competent or
incompetent, according to his interest or indifference in the ques-
tion to be solved by his evidence, and holds it immaterial whether
he was a party to the original obligation or not."

Jesse and James Robinson were competent witnesses unless
excluded by the code.   The section (400) invoked, has certainly
given rise to much difference of opinion.   Its object is plain, to
limit the general rule admitting all persons as witnesses, in
regard to transactions and communications between a witness and
a person dead or insane; but there is sometimes difficulty in
applying it.   The provision attempts to express so much and to
provide for so many cases, in such short compass, that the inten-
tion is not always obvious or free from obscurity.   The excluding
proviso embraces three classes of persons : 1. Parties.   2. Those
having an interest to be affected by the event of the action.   And,
3. Assignors.   Of course the testimony must relate to a transac-
tion or communication between the witness and the deceased.
Then they must be offered as witnesses against the party prose-
cuting or defending as administrator, &c., of such deceased
person.   And then only where such examination or judgment
." can in any manner affect the interest of such witness."   " But
where such administrator, &c., shall be examined ·on his own
behalf in regard to such transaction or communication, &c., then
all other persons, not otherwise rendered incompetent, shall be
made competent in relation to such transaction or communica-
tion."

Now apply these provisions to this case.   In the first place,
we have very grave doubt whether the act applies at all;
whether the signing of the note by Mrs. Robinson to the
creditor, Richard, in the presence of her sons, Jesse and James,
who signed as sureties, was a transaction between Jesse and
James and their mother in the sense contemplated by the pro-
vision.   As a transaction, it was entirely with Richard.   There
was no transaction between Mrs. Robinson and Jesse and James,
who signed themselves and were mere spectators of her act in

signing.  *Lobdell* v. *Lobdell,* 33 *How. Pr.* 347 ; *Wait Anno.
Code* 746 *and note.*  But as some of the cases go very far as to
what is a transaction with the deceased, we make no ruling on
the point.

If this were a simple action at law by the creditor, Richard,
against Jesse, as the representative of the estate, there would be
no difficulty ; for in that state of the pleadings, the administra-
tor, as the representative of the estate, would have had the right
to testify as to the execution of the note, and his examination
would have opened the door for all others.  *Brice* v. *Hamilton,*
12 *S. C.* 36.  But the matter is somewhat complicated by the
fact that the proceeding is in equity concerning the lands of the
estate, as to which the administrator does not represent the estate,
and all the distributees who are the legal owners are parties.
But without regard to the nature of the action, parties can only
be excluded from testifying " where such examination or any
judgment in the action can, in any manner, affect the interest of
such witness."  What is the proper construction of this declara-
tion ?  Does it mean any interest, whether for himself or against
himself; that a witness is excluded from giving testimony,
which testimony is directly against his interest?   The words
" in any manner affect his interest " are very broad, but it seems
to us that such was not the intention, but, on the contrary, that
the word " interest " indicates nothing more than the mere lia-
bility to loss or gain indifferently, and involves the idea of
personal advantage, and thus understood the word " affect " is
used in the sense of " promote."   As it was expressed by Chief
Justice Moses, in *Boykin* v. *Watts,* 6 *S. C.* 82 :  " The obvious
purpose and intent of the proviso is to exclude the evidence by
a party interested in the event of the suit, of any transaction or
communication with a deceased, by which such event may be
determined in favor of such witness."

Even by the rule of the common law an adverse interest in
the event of the suit would not exclude the witness, or rather in
such case it would be considered that he had no disqualifying
interest.   "A bankrupt is not competent, in an action by his
assignees, to prove any fact tending to increase the fund,
although both he and his creditors may be witnesses to dimin-

ish it. The same is true of a legatee, without a release, and also of an heir or distributee, in any action affecting the estate." 1 *Greenl. Evid.*, § 392 ; *Slead* v. *Brannan, Rice* 298. It was not the intention of this provision of the code to exclude those as witnesses who were competent before. " Where the statute is a mere proviso or saving clause in the act abolishing the common law disqualification of interest, it does not make incompetent such testimony as would be competent at common law." *Abb. Tr. Ev.* 61. One claiming to be a creditor of Sarah Robinson, deceased, called James Robinson, an heir of the estate, as a witness to prove that the intestate, Sarah, in her life-time, had executed the note. This evidence tended to establish the note, and thereby to diminish the estate, and of course was against the interest of the witness. We think that, although a party to the proceeding, he was not incompetent, under the code, to give such testimony.

We do not think the note was void for want of a revenue stamp. There is no evidence that, by omitting to put a stamp upon the note, the parties intended to evade the law requiring a stamp. The memorandum on the note itself shows that they had no stamp, and when procured one was to be attached. But the law of the United States which required it is now repealed. See *Pugh* v. *McCormick*, 14 *Wall.* 374 ; *United States* v. *Buzzo*, 18 *Wall.* 128 ; *Chit. Cont.* 604 *and note.*

The exception that the note presented by Richard Robinson was paid, for the reason that his return as administrator of John Robinson shows that he had charged himself with the rent, $160, for which the note was given, cannot be sustained. We can see no reason why an administrator may not account for the estate in his hands, advance the shares found due to the distributees and retain the notes given to him as his own property. The authorities cited by the appellant (*Cunningham* v. *Smith, Harp. Eq.* 90, and *Ex parte Ware*, 5 *Rich. Eq.* 474,) were both cases in which the surety had paid the debt, and the question was, whether he could be subrogated to the rights of the creditor, as to the character of the instrument securing the debt. Such cases have no analogy to this, where neither the principal nor sureties paid the debt, but the money was advanced and the note pur-

chased. It was not the duty of the payee, Richard, but of the obligors, to pay the note, which, according to the testimony, they have never done.

There is no presumption of payment, for the time is not sufficient to presume payment of a note under seal, and the proof is positive that it has never been paid.

The judgment of this court is that the judgment of the Circuit Court be affirmed.