FRANK LOBDELL ET AL., RESPONDENTS, *v.* AMMON LOB-
DELL ET AL., APPELLANTS.

*Real Estate—Verbal Contract between Father and Son, valid when.*

Where, in pursuance of a verbal agreement between the father and son, that
on condition the son will enter upon certain wild land belonging to the father,
and will settle thereon and improve it, the father will make and deliver to
the son a good and sufficient deed of the same—and the son, in pursuance of
such agreement and with the knowledge and aid of the father, proceeds to
take possession of such land and to make improvements thereon, and contin-
ues so to do for the space of twelve years, with the knowledge and consent
of his father during such time—he is entitled to the fulfilment of such agree-
ment, and may compel the same against the heirs of his father's estate.

PARKER, J.—This action is brought to compel a specific per-
formance of an alleged parol agreement between the Plaintiff's
father and the Defendant's father, by which the former agreed to
convey to the latter a piece of land. The complaint states the
agreement as follows : " That on or about the first day of Novem-
ber, 1846, Pliny Lobdell, for a good and valuable consideration,
paid by Seymour Lobdell to said Pliny, sold, and, by parol, con-
veyed to said Seymour Lobdell all that certain piece or parcel of
land," describing it by metes and bounds, " containing about four-
teen acres of land, more or less ; and at the same time said Pliny
Lobdell yielded and gave up to said Seymour Lobdell the full and
complete possession of said lands and premises, and agreed to and
with said Seymour Lobdell to execute and deliver to him or his
heirs a good and sufficient deed of conveyance thereof, in writing,
at any time, on request." It then sets forth that, in pursuance
of such sale and conveyance, and relying upon the same, and
upon the said promise to convey by a good and sufficient deed,
the said Seymour, with the knowledge and consent of said
Pliny, took and entered into the possession of the whole of said
lands, and cleared up a large portion thereof, and tilled, cultivated
and used the same as his own, continuously, until his death ; and

while thus in possession expended considerable sums of money in making substantial improvements and erecting valuable buildings thereon, with the knowledge and approbation of said Pliny. The answer denies the alleged sale and agreement to convey, and the payment of any valuable consideration, and avers that the occupation of said Seymour was by the permission of the said Pliny, who was his father, as tenant at will, and that such was at all times the understanding of the parties in respect to it.

The case was tried before a referee, who found and reported that, in November, 1846, the said Pliny Lobdell made a verbal agreement with said Seymour Lobdell, that if the said Seymour would take possession of and clear up, and reduce to cultivation and make improvements upon about fifteen acres, parcel of a piece of wild land owned by said Pliny, the said fifteen acres should become the property of said Seymour, and that he, the said Pliny, would convey the same to him by a sufficient deed of conveyance for that purpose; and that the said Seymour took possession of said fifteen acres under said agreement, built a log house thereon with Pliny's assistance, moved his family into the house, and commenced to clear up the land, and built a barn on it; and in 1852 erected on it a framed dwelling-house, into which he moved his family, and where he continued to reside until his death in May, 1864. That while so residing on the premises he cleared all of said fifteen acres but about three acres, fenced it, reduced it to cultivation, raised crops upon it, and had the entire management, use, and enjoyment of it as his own property. That the said Pliny and Seymour built a line fence between it and the residue of the lot, on which residue Pliny cleared up to the line fence on one side, and Seymour cleared up to it on the other; the said Pliny having built upon the said residue, where he lived for the last ten or twelve years of his life, and died in November, 1864.

As a conclusion of law the referee found that the Plaintiffs were entitled to judgment against these Defendants, who bring this appeal; that they convey the said fifteen acres to the Plaintiffs.

The General Term affirmed the judgment entered upon the re-

port of the referee; and the Defendants, who are deemed to convey, appeal to this Court.

No question is raised but that the contract, if made as found by the referee, was taken out of the Statute of Frauds by the part performance; but the Defendants' counsel insists that the contract found is not sustained by any evidence; that, at all events, it is not so clearly and satisfactorily proved as to make it a case for specific performance; that the failure to prove the contract set up in the complaint should have produced a dismissal of the complaint; that the promise found was without valuable consideration; that the conditions were not fully performed by the promisee, and that the fifteen acres given to the Plaintiffs was more than they are entitled to.

It is impossible to maintain that there is no evidence to support the findings of the referee. The testimony of Nancy Lobdell, the widow of Pliny, that her husband told his two sons, Seymour and Ammon, that they might have fourteen acres apiece, to go on to, and do the work as he did, and, as long as they did as he wanted them to, they might stay on it; that they should clear it up in farm-like style, and should not run over it; and (as stated on her cross-examination) that, if they would go down on to this lot and cultivate it, the land should, some time, be theirs, together with the fact that they did go down and each take possession of the piece assigned him; that when, some six months afterward, they came and asked him for deeds, or writings which on his part would entitle them to the land, he refused, on the ground that his *word* was as good as a writing; that Seymour did clear, cultivate, and build on the piece assigned to him; that the father assisted in making the line fence, cutting it off from his other land, and recognized to various witnesses Seymour's right to control it, and told the witness, Oliver Pierce, after Seymour's death, that he meant to have deeded it to Seymour before he died, is surely some evidence in support of the finding of the referee, as to the agreement and its terms.

Whether the Court would have come to the same conclusion as the referee did, in regard to the contract, upon the whole evidence,

we are not to inquire. In an action for specific performance, as in other actions, the questions of fact, upon conflicting evidence, are for the Court below, and not for this Court, except in the case provided for in § 268 of the Code.

The rule which Courts of Equity have adopted in suits for the specific performance of contracts requires that the contract be established by competent and satisfactory proof, to be clear, definite, and certain, for the reason, as Judge Story expresses it, that a Court of Equity " ought not to act upon conjectures ;" and if the proof should end in leaving the contract uncertain, so that the Court cannot say what its precise import and limitations are, a decree for a specific performance will be withheld (1 Story's Eq. Jur. §§ 764, 767). All this depends upon the evidence ; and if evidence is given in the Court below tending to the establishment of such a contract, the sufficiency of the proof to satisfy the mind of the Court as to the existence of the contract, with the requisite degree of clearness and certainty, is not a matter for this Court to consider.

The variance between the contract set up in the complaint, and that found by the referee, is not such as to require a dismissal of the complaint. Even under the former practice of the Court of Chancery, no such iron rule existed, but a variance might have led to an amendment of the bill rather than its dismissal (Harris *v.* Knickerbacker, 5 Wend. 638); or the Court would sometimes decree a specific performance in favor of the Plaintiff, notwithstanding he failed to make out the case stated in his bill (1 Story's Eq. Jur. § 770; Mortimer *v.* Orchard, 2 Ves. Jr. 243). The rule of practice established by the Code in regard to variances, however, whatever was the former rule, must now prevail in cases of this kind, as well as others. The difference between the terms of the contract, as alleged, and those proved in this case, was a mere variance, and was properly disregarded (Code, §§ 169–171). The promise to convey, as found by the referee, was not a mere voluntary one, but was made upon a *valuable* consideration, emanating from a loss or disadvantage to the promissee. Pliny said to Seymour, " If you will bestow certain work and labor upon this

piece of land, I will convey it to you." It cannot be doubted that if, after Seymour had done the work, Pliny refuses to convey, an action at law would lie for the breach of the contract. The consideration is sufficient to support the promise. A Court of Equity does not require more, in this respect, than a Court of Law, except that it will look at the consideration, with reference to its adequacy, in order to ascertain whether the inadequacy is so great as to show the contract fraudulent or unconscionable, in which case it will refuse its aid, and leave the complainant to his action at law (Seymour *v.* Delancy, 3 Cow. 445). On the other hand, "if the promisee, on the faith of the promise, does some act, or enters into some engagement which the promise justified, and which a breach of the promise would make very injurious to him, this equity might regard as confirming and establishing the promise, in much the same way as a consideration for it would " (3 Parsons on Cont. 369; Crosbie *v.* McDoual, 13 Ves. 148). In Shepperd *v.* Bevin (9 Gill, 32) it was held that money expended in improvement of land by a son, on the faith of an agreement of his parent to convey the land to him, constituted a consideration for which specific performance might be decreed against the heirs of the parent. The case at bar is stronger than that. The consideration is valuable, and there is no inadequacy; and the decreeing of a specific performance of the contract does not involve hardship or injustice against the Defendants, while the denial of such a decree would operate as a fraud upon the Plaintiffs. Their ancestor, under whom they claim, executed his part of the agreement in the confidence that the other party would do the same. To permit such other party or his heirs now to withdraw from the performance of the contract, would aid a manifest fraud against the Plaintiffs (Parkhurst *v.* Van Cortlandt, 1 John. Ch. R. 284; Malins *v.* Brown, 4 Coms. 403; 1 Story's Eq. Jur. § 759).

The performance of the agreement by Seymour Lobdell, as found by the referee, is, I think, sufficient to entitle the Plaintiffs to the conveyance. There is no defect of performance, unless in the fact that about three acres of the fifteen remained uncleared.

The contract, as found, was that Seymour should " take posses-
sion of, clear up, and reduce to cultivation, and make improve-
ments upon a part of said piece of wild land containing fifteen
acres." All this he did, with the exception above mentioned;
and this, I think, may well be deemed a substantial fulfilment of
the contract on his part, especially as the referee also finds that
the father, at various times, while Seymour lived on the premises,
assumed to direct him as to the clearing of the same, and that
Seymour regarded his directions as binding on him, and obeyed
the same.

In regard to the quantity of land contained in the piece fenced
off for Seymour by the line fence built by him and his father, the
referee also found that, although the exact quantity lying south of
the fence was not distinctly proved, yet the parties spoke of it,
treated and supposed it to be fifteen acres. The conclusion of law
that the said Seymour Lobdell, at his death, was justly and equi-
tably entitled to a deed of conveyance in fee of said fifteen acres
of land from said Pliny, and the direction of judgment for a con-
veyance to the Plaintiffs of said fifteen acres of land, does not
give them any land north of the said division fence; and if the
Plaintiffs in their judgment have so described the land as to in-
clude land north of such fence, the Defendants' remedy for such
wrong is not to be had upon this appeal, but by application to
the Court below, to correct the judgment in that respect.

Upon the trial Ammon Lobdell and George Lobdell, the De-
fendants against whom the decree to convey was made, were
sworn as witnesses, and each was sought to be examined in his
own behalf, in respect to the arrangement made between Pliny
Lobdell, their father, and Seymour Lobdell, in their presence, un-
der which Seymour went into possession of the land in question;
which was objected to by the Plaintiffs, on the ground that the
witnesses were not competent, under the 399th section of the Code,
to testify to such transaction. The objection was sustained, and
the Defendants excepted. The 399th section of the Code, as it
stood at the time of the trial, authorized parties to be witnesses in
their own behalf, in the same manner as other witnesses, " pro-

vided, however, that the assignor of a thing in action shall not be examined in behalf of said party, nor shall a party to an action be examined in his own behalf, in respect to any transaction or communication had personally by said assignor or said party, respectively, with a deceased person, against parties who are the executors, administrators, heirs-at-law, next of kin, or assignees of such deceased person," &c.   In this case a party to the action sought to be examined in his own behalf.   So far, he had a right to testify.   And it was against parties who were the heirs-at-law of a deceased person.   This was not sufficient to exclude him, unless the subject-matter of his testimony was a transaction or communication had personally by him with such deceased person. Now, the transaction or communication respecting which he sought to testify was not between himself and the deceased person, or, in the explicit language of the statute, " had personally by said party with a deceased person," but between the deceased person and a third person.   I am unable to see why he was not a competent witness to that transaction, or how, without extending the limitation further than the statute has done, he could be excluded. Although it may be said that a party standing in the relation in which he does ought to have been excluded, for he has the same advantage over the Plaintiffs as a witness as his father would have had if living, and standing as Defendant in the suit, still, unless the section as it stood can be construed so as to exclude him, the Legislature, and not the Court, must rectify the omission. It will not suffice to say the case is within the spirit of the enactment, unless a fair construction of the language used will bring it within the enactment itself.   The subject of the section is the allowance of parties to be witnesses in their own behalf, and its object is to provide generally for their examination as such witnesses, and the specific exceptions to such examination.   The Legislature having undertaken to specify the exceptions, the Courts cannot allow any that are not specified by the Legislature.   When the Legislature explicitly limited the exclusion of a party to cases in which he should offer to testify in respect to a transaction or communication had personally by him with the deceased person,

it is impossible to construe that exclusion as meaning to cover transactions or communications had by some third person, whoever he may be, and however connected with the party offering to testify, with the deceased person. Such construction would ignore the terms " had personally by him," which serve to show the precise extent of the exclusion. The testimony of these parties which was excluded, was upon a vital point in the case, the proof in regard to which was conflicting. We cannot say but that it would have overbalanced all the evidence of a contract to convey, and have satisfied the referee that none had been made. The error of their exclusion, if it was one, as I think it was, is therefore ground for a reversal of the judgment, and the granting of a new trial.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

Reversed.

<div align="right">

JOEL TIFFANY,<br>
State Reporter.