Samuel Freeman, Appellant *v.* Julia Ann Freeman et al. Respondent.

A parol promise by the owner of land to "give" it to another, accompanied by actual delivery of the possession thereof to him, will be enforced in equity by a decree for specific performance, where the promisee, induced by such promise, has made substantial improvements, and considerable expenditures upon the premises with the knowledge of the promissor.

Accordingly, where the plaintiff had placed his son, and son's wife (the defendants), in possession of a lot of land, telling them that it should be theirs as long as they lived, and that "he had bought the place for a home for them, and gave it to them," and they had thereupon kept possession, partially cleared the land, and made some other improvements upon it. —*Held*, in an action of ejectment brought by the plaintiff, these facts being set up by the defendants as a ground for equitable relief, that they were entitled to a decree for specific performance by the plaintiff of his promise to give them a life estate in the land.

The real ground upon which equitable jurisdiction is exercised in such cases, either of sale, or of gift, is to prevent a fraud being practiced upon the parol purchaser, or donee, by inducing him to expend his money in improvements upon the faith of the promise, and then depriving him of the benefit of such expenditures, and securing them to the seller or donor. —GROVER, J.

(Argued October 13th, 1870 ; decided October 25th, 1870.)

APPEAL from an order of the General Term of the Supreme Court in the sixth judicial district, reversing a judgment for the plaintiff entered upon the report of a referee, and ordering a new trial.

The action was ejectment, and the answer set up a claim for specific performance of a contract to give the premises in controversy.

The defendants are husband and wife, and the defendant, James W. Freeman, is a son of the plaintiff, Samuel Freeman. Soon after their marriage they moved to a small lot in the village of Smithville, in the county of Chenango. While residing there, and in February, 1860, the plaintiff purchased a place for them, situate in the town of Taylor, in the county of Cortland. This is the land described in the complaint. The premises contained forty acres of land, then all woodland, except about six acres. The defendants went into the possession of the premises in 1860, and cleared about twenty acres thereon, built an addition to the house, fenced the land, and made other improvements on the premises in question, and continued to occupy the same till April, 1866, at which time James W. Freeman left his wife, Julia Ann, and his family in possession of the premises, and went to reside with his father.

In August, 1866, this action was commenced by the plaintiff to recover possession of the premises, Julia Ann being in possession. Before the commencement of the suit, the plaintiff had served notice upon her to quit. James W. Freeman did not defend the action. The action was tried before a referee who made a report in favor of the plaintiff. He found as facts, that the plaintiff himself put the defendants in possession; that before doing so, he told them that the premises should be theirs as long as they lived, and that he afterward said to them that "he had bought the place for a home for them and gave it to them," and that the improvements were subsequently made by them. The defendant, Julia A. Freeman, appealed to the General Term of the Supreme Court, where the judgment of the referee was reversed, and a new trial granted (reported 51 Barb., 306), and from this order granting a new trial, the plaintiff has appealed to this court.

*M. M. Waters*, for the appellant, that the agreement to give is not one of the agreements within the meaning of the statute (2 R. S., 135, § 10), as in a gift there is no such thing as "partial performance" on the part of the donee, within the meaning of that term as used in courts of equity, cited 6. Barb., 98; 6 Paige, 293; *Fentiman* v. *Smith* (4 East., 109); *The King* v. *Inhabitants of Horndon* (4 M. & Gr., 562); *Hewlins* v. *Shipman* (5 B. & C., 221); *Wood* v. *Leadbeter* (13 M. & W., 838); *Byran* v. *Whestler* (8 B. & C., 288); *Cocker* v. *Cooper* (1 Cr. Mees. & R., 418); *Bird* v. *Higginson* (4 Nev. & Man., 505); *Cook* v. *Stearns* (11 Mass., 536); *Hayes* v. *Richardson* (1 Gill & Johns., 336); *Prince* v. *Case*,(10 Conn., 375); *Munford* v. *Whitney* (15 Wend., 380); *Miller* v. *Auburn & Syracuse R. R. Co.* (6 Hill, 61); *Brown* v. *Woodworth* (5 Barb., 551).

That chancery will never decree specific performance of a mere voluntary agreement, he cited Willard's Equity Jurisprudence, page 263; Story Eq., §§ 433, 706a, 750, 769, 706, 706a, 793a, 983, 677, 987, 1040; 1 Cow., 711; 4 John. Ch., 500; Willard on Real Estate, 544; 11 Pet., 229.

*Miner & Kern*, for the respondents, cited 1 Binney, 378; 2 Casey, 519; 6 Watts, 309; *Hugus* v. *Walker* (12 Penn. St., 174); *King* v. *Thompson* (9 Peters, 205); 24 Vermont, 560; 3 Gill, 138; 3 Maryland Ch., 119; 4 Maryland, 311; 6 Barbour, 106; 14 Johnson, 15, 35; 3 Sandf. Ch., 279, 284; 4 Comst., 410.

GROVER, J.   As the order of the General Term does not show that it was based upon errors of fact, it must be assumed by this court to have been based upon errors of law only. The facts must be assumed to have been correctly found by the referee.   The only legal questions arise upon the exception taken by the respondent to the legal conclusion drawn by the referee from the facts found by him.   That conclusion was, that although the plaintiff gave said premises to the defendant, yet said gift, being by parol, was not valid and passed no title either legal or equitable to the premises set out in the complaint, and therefore he ordered judgment for the plaintiff for the recovery of the possession thereof.   If this legal conclusion from the facts found be correct, the General Term erred in reversing the judgment, and the order appealed from must be reversed.   While the evidence contained in the case and exceptions cannot be looked into for the purpose of finding additional facts, as a ground for the reversal of the judgment, yet it may be for the purpose of determining the meaning of the findings of the referee.   When these are read, aided by this light, the referee finds that when the plaintiff purchased the lands in controversy, being about forty acres of land, wild, with the exception of about six acres which had been wholly or partially cleared, he gave it to the defendants.   That is, that he promised to give it to them for their lives and the life of the survivor, in case they would move to and reside thereon, and that in pursuance of such promise, the defendants moved to the premises and occupied the same from February, 1860, to the time of the trial of the action.   That the defendants cleared twelve or fifteen acres of the land and fenced the same, and built an

addition to the house upon the premises, being somewhat assisted therein by the plaintiff. That the defendants have paid a portion of the taxes assessed upon the land. I have assumed that the referee by the words "gave the land to the defendants" meant to be understood, that he promised to give it to them. That such was his meaning appears from the evidence, as there was no evidence of any attempt at the former, while the proof of the latter was ample. The question then is, whether a parol promise by one owning lands to give the same to another will be enforced in equity, when the promissee has been induced by the promise to go into possession, and, with the knowledge of the promissor, make comparatively large expenditures in permanent improvements upon the land. It is, and must be conceded, that if the promise by parol was to sell the land for a valuable consideration to be paid therefor by the promissee, such promise under this precise state of facts would be enforced. The ground upon which this equitable jurisdiction is exercised, although sometimes said to be part performance, really is to prevent a fraud being practiced upon the parol purchaser by the seller, by inducing him to expend his money upon improvements upon the faith of the contract, and then deprive him of the benefit of the expenditure, and secure it to the seller by permitting the latter to avoid the performance of his contract. In the case supposed, there has been no part performance of the contract, strictly speaking, except the taking possession; no part of the purchase-money having been paid, and yet the cases are numerous where performance of such contract has been decreed in equity, where possession has been taken under the contract and large expenditures upon permanent improvements made. In the present case, possession has been taken under the promise and the expenditures upon improvements made, yet it is insisted that equity will not enforce the promise for the reason that it was to give, instead of having been to sell the land for a valuable consideration. Permitting the promissor to avoid performance operates as a fraud as much in the latter as in the former case, so far as expenditures upon

improvements are concerned. The counsel for the appellant insists that there has been no part performance of the contract to give the land. The answer to this is, that possession has been taken, and valuable improvements made upon the faith of the promise. These acts constitute part performance by the respondents. It is true that the plaintiff has done nothing by way of performance on his part. It is not necessary that he should. Part performance by the party seeking to enforce the contract is sufficient. It is further insisted, that an executory promise, not founded upon any valuable consideration, is a mere nude pact, furnishing no grounds for an action at law, and that performance of such a promise will not be enforced in equity. This is true so long as the promise has no consideration. Anything that may be detrimental to the promissee or beneficial to the promissor in legal estimation will constitute a good consideration for a promise. Expenditures made upon permanent improvements upon land with the knowledge of the owner, induced by his promise, made to the party making the expenditure, to give the land to such party, constitute in equity a consideration for the promise. (*Lobdell* v. *Lobdell*, 33 How., 347; id., 1, 32; *Crosbie* v. *McDaul*, 13 Vesey, 147; *Shephard* v. *Bivin*, 9 Gill, 32; Parsons on Contract, 3 vol., p. 359.) The statute of frauds has no bearing upon the case. If the promise reduced to writing could, under the circumstances, be enforced in equity, it may be, although by parol. (2 Statutes at Large, 139, § 10.) The order granting a new trial must be affirmed, and judgment final upon the stipulation rendered against the plaintiff.

All concurring. Order of General Term affirmed and judgment for defendant ordered.