## BALL v. BALL.

(Supreme Court, Appellate Division, Second Department. October 14, 1904.)

1. HUSBAND AND WIFE—DEEDS—CANCELLATION.

Certain property was conveyed to a husband, but before the deeds were recorded he procured the grantor to execute a new deed to the wife, which was immediately recorded. The deeds to the husband were treated as nullities, but were kept for many years unrecorded in a small trunk, with other papers, to which both parties had access. A house was subsequently built on the land with the wife's money, and 10 years after

the purchase of the property, and after husband and wife had separated, he procured the original deeds to be recorded, and brought ejectment against her, whereupon she sued to have such deeds set aside. *Held* that, as between the parties, and in the absence of claims of creditors, the grantor's deed to the wife vested the legal title to the property in her, and that she was entitled to the cancellation of the deeds to her husband.

Appeal from Special Term, Richmond County.

Suit by Mary C. Ball against Flexman E. Ball. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

Benjamin Patterson, for appellant.
John Widdecombe, for respondent.

HIRSCHBERG, P. J. The plaintiff is the wife of the defendant, and she sues her husband in this action in order to have two deeds of real estate, which are recorded in his name, canceled as null and void. At the close of the evidence on her behalf judgment was granted in favor of the defendant, and the question on appeal is whether she was entitled to the relief sought upon the undisputed proof.

The real estate belonged to Nicholas D. Egbert in September, 1890. On September 19, 1890, he deeded one parcel to the defendant, and on the 3d day of April, 1891, he deeded to him the other, an adjoining, parcel. These are the deeds which are assailed by the plaintiff's action. The plaintiff testified that her husband, shortly after he received the second deed, expressed sorrow that he had not had it made in her name, and promised to have it transferred to her; saying, "It is not too late yet." Thereafter counsel was had as to the means of transferring the title of both pieces to her, and the defendant was finally advised by a Judge Simonson that it would be sufficient if he procured another deed from Mr. Egbert to the plaintiff, and that it would be unnecessary, as at first proposed, to make the transfer from the defendant to the plaintiff through an intermediary. The defendant accordingly did procure from Mr. Egbert a deed of both parcels directly to the plaintiff, which deed was executed on May 1, 1891, but was dated back to September 19, 1890, the date of the defendant's first deed. On receiving the plaintiff's deed from Mr. Egbert, the defendant, on May 6, 1891, caused it to be placed upon record in the clerk's office of the county where the property is situated, and thereafter to be returned to the plaintiff by mail, she ultimately receiving it through the post office, and ever since retaining possession of it. The understanding between the parties as to the defendant's two deeds was that they were no good, and should be destroyed. They were not destroyed, however, but were kept for years, unrecorded, in a small trunk, with other papers, both parties having access to them, and neither apparently deeming them of any consequence. For a period of nine years after the title had been placed in the plaintiff, the parties lived upon the premises. A house was built in part from the plaintiff's money and partly from the proceeds of a mortgage placed by her upon the property to secure a loan to her from her father-in-law, which mortgage he canceled as a present to her on the birth of her child in 1895. The property was always considered

as hers, and was always acknowledged by her husband to be hers. Indeed, the learned trial justice in his opinion states that both parties supposed that the Egbert deed of May 1, 1891, vested the title in her, and that all their subsequent transactions were based upon that belief, which, however, he finds to be erroneous as matter of law. In September, 1900, domestic discord caused a separation of the parties, the defendant leaving the premises, and removing therefrom all his own personal belongings, including certain chattels transferred to him by the plaintiff by bill of sale executed July 1, 1901. For this bill of sale he paid her $200, and she agrees in the document not to ask him for support and maintenance. On April 1, 1901, she leased the house and real property to a tenant, who has ever since been in possession in subordination to her title, and who pays to her the rent reserved. On April 2, 1902, the defendant placed upon record his first deed from Egbert; on February 16, 1903, he placed his second deed upon record; and on the following day he commenced an action of ejectment against the plaintiff and her tenant, claiming the right to possession by virtue of his deeds, which action is still pending and undetermined.

The theory upon which the plaintiff has been defeated is expressed by the learned trial justice in his opinion in these words:

"This is not a case of permanent improvements made on the faith of defendant's promise to convey the property in question to plaintiff, or to procure it to be so conveyed, which promise he now refuses to perform. What was done twelve years ago both parties supposed had vested the title in the plaintiff, and, if plaintiff made any improvements it was in that belief, and not in reliance upon any executory promise whatever of the defendant to secure the property to her. The plaintiff's position, if she has made any improvements, is that of any other person who makes improvements erroneously, believing himself to have title. She cannot, because of that fact, compel the true owner to convey to her. He was no more aware than she that the property was his. He did not stand by in dishonest silence and see her make improvements when good faith required him to assert his ownership. He, as well as she, supposed the title in her, though both alike knew the facts from which it followed as a matter of law that the title was in him."

It seems to me that the deed from Egbert to the plaintiff operated, as between the parties to this action, to place the legal title to the property in her. As between them, in the absence of claims of creditors, lienors, and others, she became the true owner, as it was intended she should be, wholly irrespective of the extent and character of the improvements which she afterwards made, and even without the making of such improvements. The procuring of the deed from Egbert to her was merely the means or instrumentality by which the defendant conveyed the property to her, and as between them should certainly be regarded as quite as effective when recorded and delivered by him as if he had executed the deed himself. Good faith then required him to destroy his own unrecorded deeds, in accordance with the intention of all concerned, doubtless including even the grantor, Mr. Egbert; and, had he done so, there could be no question raised between the parties to this action as to the legal title. And I fail to see how he could create a good legal title in himself or against her by his subsequent act of bad faith in recording the deeds, which clearly both parties to this suit intended and had agreed should be null and void. The mere existence of the prior deeds did not invalidate the latest one. The latter

was executed as a substitute for, and to take the place of, the former; and I know no rule of law which prohibits such a transaction among adults, in the absence of adverse rights, claims, or interests.

However that may be, there certainly can be no question but that upon the recording and delivery of her deed the plaintiff acquired a good equitable title to the property as against her husband. The action is in equity, and the right to judgment depends only upon a determination of the equitable title. The plaintiff would have acquired such title upon the mere oral promise of the defendant to give her the property, followed by the delivery of possession and the making by her of substantial improvements, such as she unquestionably did make. Her possession, in such circumstances, even without a deed, could not be afterwards disturbed by him, and a court of equity would compel the execution and delivery to her of a promised conveyance. Lobdell v. Lobdell, 36 N. Y. 327; Freeman v. Freeman, 43 N. Y. 34, 3 Am. Rep. 657; Young v. Overbaugh, 145 N. Y. 158, 39 N. E. 712. Her position cannot be weakened as the owner of the equitable title because of the deed which she has. Her equitable title was in fact acquired from the defendant, notwithstanding that the deed to her was executed by another; and the circumstances of the case, unqualified and uncontradicted, require that the deeds by which he has since sought to obtain title and the right to possession should be canceled and annulled.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.