131 App. Div. 696, 116 N. Y. Supp. 471; 197 N. Y. 518, 90 N. E. 59. In the course of that opinion he had occasion to consider the case of certain claimants who had filed claims before the street upon which their property abutted had been legally closed by the actual opening of a street bounding the block on the permanent map on which their property lay. He said:

"All of the other claimants, therefore, at the time of presenting their claims still retained the same right to use the streets which are to be discontinued that they theretofore enjoyed, and their claims were prematurely filed before any right of damages had accrued." Page 721 of 131 App. Div., page 490 of 116 N. Y. Supp.

The presiding justice in the same case, although not concurring in all respects with the prevailing opinion, did agree with so much of the opinion as is quoted above, saying:

"But the moment a street becomes a discontinued street under this provision of the statute then the damage caused to the abutting property by the discontinuance of the street at once accrues, and it is the damage sustained at the time the street becomes an actually closed street to which the abutting owner is entitled. Matter of Mayor, &c., of New York, 166 N. Y. 495 [60 N. E. 180]." Page 725 of 131 App. Div., page 493 of 116 N. Y. Supp.

We think it quite clear that an abutting owner under the circumstances of this particular case cannot be brought within the limitation prescribed by section 5 of the act. Until the street upon which his property abuts is actually closed, he is neither aggrieved by the closing, nor can he claim damages therefor. He cannot file a claim until he is damaged, and, if the street upon which his property abuts is not closed for ten years after the filing of the permanent map or plan, he certainly cannot file a claim within six years thereafter. Whether there be any limitation upon the time within which he must file his claim it is not necessary now to determine. It may be that by analogy the limitation upon him would be held to be six years after the actual closing of the discontinued street. It is not, however, of the highest importance, because the corporation counsel has ample power under the act to initiate the proceedings and thus cut off the running of claims.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur.

---

### RACICH ASBESTOS MFG. CO. v. BROOKS et al.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. SPECIFIC PERFORMANCE (§ 28*)—CONTRACTS—ENFORCEMENT—CERTAINTY.
    Equity will not compel specific performance of an agreement unless it is definite and certain in its terms.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 61–68; Dec. Dig. § 28.*]

2. SPECIFIC PERFORMANCE (§ 121*)—EVIDENCE—SATISFACTORY PROOF.
    To justify specific performance of a contract, it must be established by satisfactory proof.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SPECIFIC PERFORMANCE (§ 121*)—PROCEEDINGS—WEIGHT AND SUFFICIENCY
OF EVIDENCE.

    Evidence, in an action for specific performance of an alleged oral agreement to execute a lease containing certain provisions, *held* insufficient to sustain a verdict for plaintiff.

    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

Appeal from Special Term, New York County.

Action by the Racich Asbestos Manufacturing Company against Sarah J. Brooks and another. From a judgment for plaintiff entered on a decision after trial at Special Term, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Max D. Steuer, for appellants.
Almet R. Latson, for respondent.

MILLER, J. This is an action for the specific performance of an oral agreement to execute a lease. The defendant Sarah J. Brooks was the owner of a leasehold estate in premises situated on the north side of West Fifty-Fifth street, between Eleventh avenue and the Hudson river, in the borough of Manhattan. When the contract in suit was made, her lease had 11 years and 3 months to run and contained a provision that, at its termination, the landlord at his option would either purchase any buildings that may have been constructed upon the premises, at a price to be determined in a specified manner, or would grant a renewal of the lease for a similar term. The rent reserved was $1,500 a year. It is undisputed that the defendant Racich approached the defendant Charles J. Brooks, a son of the defendant Sarah J. Brooks, with a proposition to lease the said premises or a part of them for the purpose of conducting thereon his business of manufacturing asbestos materials. He also proposed to give Charles an interest in the business, if the latter could contribute $10,000. Thereupon those propositions were submitted to Mrs. Brooks, who agreed to give a lease of a part of said premises and to loan Charles $10,000 to invest in the business. It was thereupon arranged to organize a corporation, with a capitalization of $50,000. A certificate, incorporating the plaintiff, was filed on January 24, 1907, and on January 31, 1907, Mrs. Brooks executed a lease to the defendant Racich and her son Charles. Thereafter the organization of the plaintiff was completed by the issuance of stock and the election of officers, and it proceeded to erect upon the premises a building costing between $20,000 and $25,000. The lease of January 31st provided for an annual rental of $1,600 for the term of 11 years and 3 months, and it contained this provision:

    "It is further agreed that in case said tenants or their assigns erect any additional structure or building upon said premises or any part thereof, that any and all additional municipal tax which may be assessed because thereof is to be paid by said tenants or their assigns. * * *"

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It did not contain a provision, requiring the landlord at her option to pay for the buildings erected or to give a renewal of the lease. When the building erected by the plaintiff was nearly completed, the defendant Racich, on its behalf, demanded of Mrs. Brooks that she execute a lease to the plaintiff containing such a provision. The judgment appealed from requires her to execute and deliver such a lease.

[1, 2] Although the agreement was void for not being in writing, I shall assume that, if satisfactorily established, it has been so far performed as to be taken out of the statute of frauds. It is an elementary rule that a court of equity will not enjoin specific performance of an agreement unless it is definite and certain in its terms. Stanton v. Miller, 58 N. Y. 192; Sharkey v. Larkin, 52 N. Y. 623; Mayer v. McCreery, 119 N. Y. 434, 23 N. E. 1045. It is also well settled that, to justify specific performance of a contract, it must be established by satisfactory proof. Lobdell v. Lobdell, 36 N. Y. 327.

[3] The evidence to establish the agreement consists of the testimony of the defendant Racich. He testified: That at the first interview between him and the defendants, Sarah J. Brooks and Charles J. Brooks, the old lease was produced and read aloud by the latter. That then "it was said, 'Will we get that lease, the same lease you have?' He (meaning Charles) said, 'The same thing.' * * *. I asked them, 'Is that the same lease they are going to give to us?' She said: 'Yes, the same lease; I cannot give you any more but just what I have got.'" Referring to this conversation on cross-examination, he testified that Mrs. Brooks said: "I will give you the same terms as I got; you cannot expect any more." And further, "They gave us the same term as in this lease." It is claimed that, after the dispute arose, Mrs. Brooks made certain admissions, which tend to support the plaintiff's theory. But the statements relied upon were equivocal at the best, and, in view of the circumstances under which they are claimed to have been made, we attach no importance to them. The plaintiff's case, therefore, rests upon the testimony of the defendant Racich, which, as qualified on cross-examination, leaves it doubtful whether the old lease was referred to, except as fixing the term of 11 years and 3 months for which the new lease was to be given. It plainly appears that the agreement was not one to give a lease identical with the old lease, because the lease first executed, pursuant to the agreement, provided for an annual rental of $1,600 instead of $1,500 and for only a part of the premises leased to Mrs. Brooks, and there is no dispute but that, in those respects, it conformed to the agreement. That lease was drawn by Mr. McAdam, who represented Mrs. Brooks, pursuant to instructions given to him by the defendants Racich and Charles J. Brooks. The provision for the purchase of the buildings or for the renewal of the lease upon its termination was an important one, and, if it had been in the minds of the parties, it is highly improbable that the defendant Racich would have accepted a lease, so soon after the agreement was made, which did not embody that provision in its terms. The lease accepted by him was not drawn without reference to the contemplated building, because it contained the express provision in relation thereto hereinbefore quoted. The

plaintiff insists that that was only intended as a temporary lease. Obviously it was intended to embody the terms of the oral agreement. It was for the term agreed upon, 11 years and 3 months, and was made before the erection of the building was begun. All that was required was the assignment of that lease to the plaintiff upon its organization. Mrs. Brooks denies that she agreed to incorporate into the lease the said provision, with relation to the purchase of the buildings or the renewal of the lease upon its termination. The defendant Charles J. Brooks testified that the reference to the old lease was in relation to the term of the new one, 11 years and 3 months, and Mr. McAdam testified, not only that the first lease to the defendants Racich and Charles J. Brooks was drawn exactly in accordance with their instructions, but that, when a lease to the plaintiff was demanded, the defendant Racich first instructed him to draw one precisely like the first, except that it was to be made to the plaintiff.

We have then, so far as the disputed point is concerned, the following elements: An alleged agreement, void for not being in writing; the evidence, relied upon to establish it, somewhat equivocal and, at the best, unsatisfactory; a preponderance of evidence against the making of it; a writing made under such circumstances that, presumably at least, it included all of the terms of the oral agreement. We think that, under those circumstances, the court was not justified in decreeing specific performance.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the final award of costs. All concur.