(161 App. Div. 366)

### MESSIAH HOME FOR CHILDREN IN CITY OF NEW YORK v. ROGERS et al.

(Supreme Court, Appellate Division, First Department. March 20, 1914.)

1. SPECIFIC PERFORMANCE (§ 114*) — ORAL CONTRACT — SUFFICIENCY OF COMPLAINT.

   The complaint averred that the father of defendant offered to buy land and to erect a building thereon as a "Home," for children, which offer was accepted by minutes entered in plaintiff's record; that the father thereafter purchased land for $100,000, and, in accordance with plans approved by plaintiff's board, erected a building thereon at an expense of $350,000, on which plaintiff's name was put, and which, in 1908, plaintiff formally and publicly accepted and dedicated as a gift, entering into possession and using it in carrying on its work, and incurring expenses for its maintenance and improvement; that the donor, however, retained the record title, and by a dummy transaction in 1909 conveyed one-half of the land without consideration to an office associate, who immediately mortgaged it to defendant for $600,000 at 6 per cent. and reconveyed it to defendant, which conveyances were recorded without actual notice to plaintiff; that, at the same time, defendant conveyed the title to plaintiff subject to the mortgage lien. *Held*, that the complaint stated a cause of action for specific performance of the oral contract free from any cloud or lien.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 356–370, 372; Dec. Dig. § 114.*]

2. SPECIFIC PERFORMANCE (§ 47*)—ORAL CONTRACT—IMPROVEMENTS.

   An oral contract for the gift or conveyance of property which the donee has accepted and partly performed by going into possession and making improvements will be specifically enforced in order to prevent a fraud being practiced upon him by inducing him to expend money upon improvements upon the faith of the contract.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 132; Dec. Dig. § 47.*]

Appeal from Special Term, New York County.

Action by the Messiah Home for Children in the City of New York against Henry H. Rogers, Jr., and others. From an order sustaining demurrers to the complaint, plaintiff appeals. Order sustaining the demurrer reversed, and motion for judgment on the pleadings denied.

Argued before LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Conway, Williams & Kelly, of New York City (Henry W. Jessup, of New York City, of counsel, and Eustace Conway, of New York City, on the brief), for appellant.

Shearman & Sterling, of New York City (John A. Garver, of New York City, of counsel), for respondents.

CLARKE, J. The complaint alleges that the Messiah Home for Children was incorporated to provide a home for minor children, who are dependent upon working mothers for their support, or who are orphan, pauper, or destitute, or who need temporary care or shelter, and to educate and care for such children as may be committed to its custody and to assist such children to obtain suitable situations when fitted therefor. The certificate of incorporation was filed May 15, 1889.

Prior to the said incorporation and since the year 1884, the same or similar charity has been conducted under the same name by the members of the Church of the Messiah, as a part or annex of the charitable and Sunday school work of said church.

November 2, 1898, Mrs. Emilie Rogers, a member of said church, the second wife of Henry H. Rogers, Sr., was unanimously elected president of the plaintiff and served as such president until her death.

On April 6, 1901, the charity then occupying as its home the house at 490 Mott avenue, at a meeting of the board of managers, at which Mrs. Rogers presided, she communicated to the plaintiff through said board, in the name of her husband and of herself, a gift he had promised her for the Home, and which she and he proposed accordingly to make to the Home, of land, including the offer to build thereon a "Messiah Home" for the plaintiff, which proposition was recorded upon the minutes of the board. And this additional minute was made:

"This proposition was received as a most generous gift on the part of Mr. and Mrs. Henry H. Rogers, and a unanimous and heartfelt vote of thanks was given to them."

On March 25, 1902, Mr. Rogers purchased the site for the Home theretofore promised, on which stood an old house, in good condition. The gift of said land and Home was thereafter made to the plaintiff and, on or about the 12th day of March, 1902, Mrs. Rogers presiding reported to the plaintiff through its board of managers, for herself and Mr. Rogers, that Mr. Rogers had purchased for plaintiff the said site for the new Home, and that the house then standing should be used for a temporary Home until the new Home was completed, and thereupon a vote of thanks was accorded to Mr. and Mrs. Rogers for their kindness to the "Messiah Home," and the said gift was accepted.

Mr. Rogers, pursuant to said offer and acceptance, put the said house in order for the plaintiff, and on May 7, 1902, Mrs. Rogers presiding, it was announced to the plaintiff through its board of managers that the said house and the new site were to be delivered to and come into the possession of the Home on or about May 8, 1902; the permanent building to proceed to completion as soon as practicable.

Pursuant to said announcement, at the end of May, 1902, the house and premises upon which it stood were delivered by Mr. Rogers to

and came into possession of plaintiff. The plaintiff moved from its then home at Mott avenue and 147th street, and bought new furniture, much of it contributed by Mrs. Rogers, for its said temporary quarters, and incurred an increased budget of maintenance and expense. The Messiah Home carried on its work there and on the grounds adjacent until the completion of its new Home.

At this time Mr. Rogers employed an architect to make plans for the new building for the Home, and these being prepared Mr. Rogers on November 8, 1902, sent them to the board for its consideration and approval. These plans, the architect later, on the completion of the building, returned and delivered to this plaintiff as the owner thereof.

The plans were carefully examined and considered by said board, certain suggestions and criticisms were made which were communicated to Mr. Rogers and to the architect, which were adopted in whole or in part. On the 1st of November, 1905, Mrs. Rogers, presiding, reported to the plaintiff, through the board of managers, that ground had been broken for the new Home and that the architect hoped to have it finished in one year.

Early in 1908 the edifice was completed by Mr. Rogers for this plaintiff; over its front portal he had caused to be deeply cut into the stone the words "Messiah Home" in large letters.

On March 4, 1908, plaintiff, through its board of managers, entered into possession of and accepted, dedicated, and held its first meeting in the new Home which Mr. Rogers had thus built for and dedicated to the uses of the plaintiff on the said premises, into possession of which it had already entered, as aforesaid, and then and there such Home was also delivered to them in accordance with the previous announcements and promises, and thereupon, by formal action of the board:

"A hearty vote of thanks was given to Mr. and Mrs. Rogers for the exquisite Home which we are taking possession of, expressing the thorough appreciation of the board for the gift."

And thereupon and on the same day the new Home was dedicated, the Rev. Dr. Collyer, pastor emeritus of the Church of the Messiah presiding, by formal exercises, and the acceptance and appreciation of the plaintiff through its board of managers and Dr. Collyer was cabled to Mr. Rogers, who at that time was abroad in Bermuda.

Ever since that time the plaintiff has been and still is in undisturbed possession of said premises thus secured by gift to the plaintiff and dedicated to the purposes of its work, and the said Henry H. Rogers and his wife, so long as they lived, ratified the gift and also contributed to its support and to the carrying on of its work at the place, possession of which had been thus formally given to it by Mr. and Mrs. Rogers.

The record title to the land hereafter described was for a time left in the name of said Henry H. Rogers, who held such record title in trust for the plaintiff; and his wife in his name repeatedly assured the plaintiff that, when the new building was fully completed, Mr. Rogers would transfer such record title to plaintiff. That plaintiff relied on said assurance and on the public gift and dedication to its

work, by said Mr. and Mrs. Rogers, of the premises, and received it and made no effort to expedite the performance of this trust duty.

Said premises were purchased for $100,000 from the Fordham Morris estate and were promised to the plaintiff for the uses and purposes of its work and were situated in Bronx borough and bounded by Tremont avenue, Montgomery avenue, West 176th street, and Andrews avenue. Thereafter it was announced to the plaintiff through its board of managers, by Mrs. Rogers in her name and that of Henry H. Rogers, that the formal record title in the premises thus given to the plaintiff and so for a time held in trust by Mr. Rogers, and which had been thus dedicated to the purposes of its work, and into possession of which it had thus entered, had been formally conveyed to the plaintiff by deed. Plaintiff again relied upon this assurance and believed it and made no search of the records in regard thereto, and, relying on said assurances and on the public gift and dedication of the premises by said Mr. and Mrs. Rogers, the managers and members of said plaintiff operated said Home and carried on its work therein by subscriptions and voluntary donations as well as by individual work; also relying on said assurances and dedication, as aforesaid, plaintiff made various improvements on the premises at its own expense and paid out moneys and incurred expense to a large amount, as the owners of the property.

Thereafter Mr. Rogers died on the 19th of May, 1909, leaving a last will and testament, and his wife died on the 30th day of August, 1912.

Thereafter and during the year 1912 this plaintiff was advised for the first time by Henry H. Rogers, Jr., that he held a mortgage on the premises conveyed to the plaintiff by his father, in the sum of $600,000, and which he stated had been transferred to his father's estate, and that he thereupon stated that the said premises would be given over to some other purpose except and unless the plaintiff should comply with certain conditions in respect to the management and direction of the charity and trust committed to it, which were impossible of being complied with, onerous, and burdensome, and which plaintiff alleges the said defendant, Henry H. Rogers, Jr., had no right, power, or authority to impose or exact. Thereupon, upon a search of the record, in regard to the said alleged mortgage of $600,000, the following facts were developed and are alleged on information and belief:

There are on record three several instruments recorded on the 9th day of January, 1909, at intervals of five minutes apart.

The first was an indenture dated December 29, 1909, between Henry H. Rogers and Emilie R. Rogers, his wife, parties of the first part, and one George Keiser, of the second part, acknowledged January 7, 1909. This deed purported to convey to the said Keiser the premises therein described, being the more northerly half approximately of said block hereinbefore described upon which the said Messiah Home had then been erected. This deed was executed at the time when, as aforesaid, said Rogers held the record title in trust for plaintiff, as aforesaid, but contained no reference to said trust.

The second was an indenture dated December 29, 1908, by and be-

tween George Keiser and Amelia M. Keiser, his wife, of the first part, and Henry H. Rogers, Jr., of the second part, the defendant above named, acknowledged January 7, 1909. This purported to be a purchase-money mortgage to said Henry H. Rogers, Jr., to secure the sum of $600,000.

The third was an indenture dated December 30, 1908, acknowledged January 7, 1909, between George and Amelia M. Keiser, his wife, of the first part, and Henry H. Rogers, of the second part, which instrument purported to convey back to said Henry H. Rogers the said property conveyed to Keiser by said Rogers and wife by Exhibit B. At the same time and by an instrument dated January 7, 1909, and acknowledged the same day, the said Henry H. Rogers and Emilie R. Rogers, his wife, of the first part, conveyed to this plaintiff, as party of the second part, the premises described in said Exhibits B, C, and D, with a habendum clause followed by the words "subject to all liens." That such "liens" appear to include such mortgage to Henry H. Rogers, Jr., sought to be impressed on the premises in violation of the trust in behalf of plaintiff as aforesaid.

Said instruments were all recorded on the same day. The said George Keiser was a mere office associate of Knox & Dooling, the attorneys for Henry H. Rogers in this and other matters. He had actual notice of the fact that said Rogers held the record title in trust for plaintiff. The said Keiser had no intent to acquire this land, entered into no negotiation whereby the price or any price was fixed, and therefore he acted as a dummy or mere convenience for creating a cloud upon the title. He never in fact received the sum of $600,000 mentioned in said mortgage, nor any sum, nor paid the same, or had any intention of paying the same to the defendant Rogers, Jr., under Exhibit B, and it was never intended he should receive consideration for said mortgage, Exhibit C, or should pay any consideration for the instrument, Exhibit B.

Said defendant Henry H. Rogers, Jr., did not in fact pay or lend the sum of $600,000 to him, or any consideration for said mortgage given to him and described as a purchase-money mortgage by the said George Keiser and his wife, that it was not in fact contemplated or intended that he should make any such loan, no such loan was in fact ever made by this defendant, Henry H. Rogers, Jr., or by any one in his behalf or interest.

The said Henry H. Rogers, Sr., never received any consideration for the deed to Keiser, and the whole transaction was not a transaction representing the transfer and retransfer of any interest or pecuniary right, nor were these transactions intended to vest in any of the parties thereto any title or assertible right against the premises, and that it was a mere device on the part of Henry H. Rogers, Sr., in attempted furtherance of his desire to benefit and help the plaintiff in the carrying out of the gift already made to them and into possession of which they had already entered, but in actual violation of the trust in favor of the plaintiff under which he held the record title, and hence invalid and inoperative to create any right or assertible title in Keiser or the defendant Rogers or any one else, as against the plaintiff donee.

Mrs. Emilie R. Rogers, as the president of the plaintiff, while taking part in the execution of the instrument above referred to, as the wife of Henry H. Rogers, Sr., and at his direction, never communicated to the plaintiff nor was it given notice of the fact that any limitation or restriction or cloud or lien or claim had been made of record affecting the entirety and completeness of the gift of the land and of the building which she and Mr. Rogers had previously made, as aforesaid, and turned over to the plaintiff. No claim was ever made during the lifetime of Henry H. Rogers or his wife, Emilie R. Rogers, by the said Henry H. Rogers, Jr., to be the mortgagee in the premises as aforesaid. The said Henry H. Rogers, Jr., has never demanded any interest on said mortgage, nor has he demanded the principal sum of $600,000 which became due in December, 1911, according to the terms of the mortgage. In the fall of 1912, in response to a request for a contribution in aid of the maintenance of the work and the Home, made to the defendant Henry H. Rogers, Jr., he for the first time disclosed that he held a mortgage of $600,000 upon the Home and its property.

Plaintiff alleges that it has been for one year and more in possession of the property and claims to be the owner thereof in fee and entitled to the entire, unclouded, and undiminished interest in and to the said premises, but that it appears from the public records and from the claim above referred to of said Henry H. Rogers, Jr., that there is an incumbrance upon said property, the said mortgage in the amount of $600,000 with interest thereon, which constitutes a claim to the said real property belonging to the plaintiff, and that the source of the plaintiff's title is by gift from Henry H. Rogers, the purchaser and owner of certain lands, which said gift was intended to be in fee; that the said defendant Henry H. Rogers, Jr., unjustly claims, and it appears from the public records that he has, a lien or incumbrance thereupon, to wit, the said mortgage of $600,000.

Plaintiff further alleges that the said Henry H. Rogers never intended that said mortgage should be an enforceable lien on the premises nor to violate his trust; neither to limit nor impair the entirety of his gift to the plaintiff, and that said fact more fully appears from the facts above alleged, and especially that he paid for the entire block purchased by him as aforesaid for the plaintiff of which about half is included in the premises conveyed to plaintiff, $100,000, and that he paid, as the plaintiff is informed and verily believes, for the erection of the Home upon the more northerly part of the block purchased by him for the plaintiff, not more than $350,000, and also said Henry H. Rogers reserved by his deed award by the city for a street opening adjacent, leaving to the Messiah Home, as owner, the obligation to pay its assessment therefor to the city, so that the total pecuniary value of his record gift to the plaintiff at the time was $450,000, including the value of the balance of the block, which, after the death of said Henry H. Rogers, Sr., and his wife, plaintiff for the first time learned had not entirely been conveyed of record to this plaintiff.

Therefore the plaintiff demands judgment that the defendants and every person claiming under them and each of them be barred from all

claim to any estate in the property described, and that the said Henry H. Rogers, Jr., be directed to deliver up the said mortgage and the bond, if any, collateral thereto, and that this court direct said mortgage to be canceled of record, and that said Henry H. Rogers, Jr., his heirs, assigns, etc., be enjoined from taking any proceedings at law or in equity for the enforcement of said mortgage or for the collection of any of the moneys purporting to be secured thereby, or by the bond accompanying same.

The gentlewomen of the congregation of the Church of the Messiah who had instituted and carried on this charity for little children, in connection with its Sunday school work, had incorporated the society, had procured a building, and were in successful operation in a small way when Mrs. Rogers became its president. As she and her husband became interested in the work, she as his agent and on his behalf offered a gift by which the work could be enlarged and extended. He offered land and a building to be erected. The proffered gift was formally accepted by the adoption of minutes by the board of managers. He purchased a parcel of land on which a house was standing. The Home was removed from its existing quarters to this house, and remained there for a number of years. But it was used as a temporary home until the completion of the new building. Mr. Rogers had the plans for the new building submitted by the architect to the board of managers, and their criticisms and suggestions were acted upon. On the completion of the building, undoubtedly intended for the plaintiff, with its name deeply cut in the stone over its portal, he caused the plans to be delivered to them by the architect. It was publicly dedicated as the gift of Mr. Rogers and his wife. Formal resolutions of appreciation and thanks were adopted and cabled to him at Bermuda. The plaintiff, which had been in possession of the property for years, moved from its temporary house to its new building so erected, accepted, and dedicated. Its board of managers believed, and was entitled to believe, that the property was owned as well as possessed by it. Relying upon all these facts, the assurances, and dedication, it "made various improvements on the premises at its own expense and paid out moneys and incurred expenses to a large amount, as the owners of the property."

[1, 2] If the foregoing were all the facts, I think the complaint would sufficiently set forth a cause of action for specific performance, and be demurrer proof. There would be thus presented an oral accepted gift of real property upon which the donee had acted by going into possession and making improvements. Under the New York cases a cause of action is stated.

The leading case is Freeman v. Freeman, 43 N. Y. 34, 3 Am. Rep. 657. Grover, J., said:

"The question then is whether a parol promise by one owning lands to give the same to another will be enforced in equity, when the promisee has been induced by the promise to go into possession, and, with the knowledge of the promisor, make comparatively large expenditures in permanent improvements upon the land. It is, and must be conceded, that if the promise by parol was to sell the land for a valuable consideration to be paid therefor by the promisee, such promise under this precise state of facts would be enforced.

The ground upon which this equitable jurisdiction is exercised, although sometimes said to be part performance, really is to prevent a fraud being practiced upon the parol purchaser by the seller, by inducing him to expend his money upon improvements upon the faith of the contract, and then deprive him of the benefit of the expenditure, and secure it to the seller by permitting the latter to avoid the performance of his contract. In the case supposed, there has been no part performance of the contract, strictly speaking, except the taking possession, no part of the purchase money having been paid, and yet the cases are numerous where performance of such contract has been decreed in equity, where possession has been taken under the contract and large expenditures upon permanent improvements made. In the present case, possession has been taken under the promise and the expenditure upon improvements made, yet it is insisted that equity will not enforce the promise for the reason that it was to give, instead of having been to sell, the land for a valuable consideration. Permitting the promisor to avoid performance operates as a fraud as much in the latter as in the former case, so far as expenditures upon improvements are concerned. The counsel for the appellant insists that there has been no part performance of the contract to give the land. The answer to this is that possession has been taken, and valuable improvements made upon the faith of the promise. These acts constitute part performance by the respondents. It is true that the plaintiff has done nothing by way of performance on his part. It is not necessary that he should. Part performance by the party seeking to enforce the contract is sufficient. It is further insisted that an executory promise, not founded upon any valuable consideration, is a mere nude pact, furnishing no grounds for an action at law, and that performance of such a promise will not be enforced in equity. This is true so long as the promise has no consideration. Anything that may be detrimental to the promisee or beneficial to the promisor in legal estimation will constitute a good consideration for a promise. Expenditures made upon permanent improvements upon land with the knowledge of the owner, induced by his promise, made to the party making the expenditure, to give the land to such party, constitute in equity a consideration for the promise. Lobdell v. Lobdell, 33 How. Prac. 347; Id., 32 How. Prac. 1; Crosbie v. McDaul, 13 Vesey, 147; Shephard v. Bevin, 9 Gill. (Md.) 32; 3 Parsons on Contract, p. 359. The statute of frauds has no bearing upon the case. If the promise reduced to writing could, under the circumstances, be enforced in equity, it may be, although by parol. 2 Statutes at Large, 139, § 10."

In Young v. Overbaugh, 145 N. Y. 158, 39 N. E. 712, plaintiff brought ejectment to recover the possession of land and a dwelling thereon, occupied by the defendant and her husband. It was conceded that the legal title was in plaintiff's testator at the time of his death. Defendant claimed that she was the equitable owner by reason of promises made by plaintiff's testator to her and of acts done by her in reliance upon these promises. Gray, J.:

"Where there has been a parol promise to convey, a taking of possession under such promise, and the making of permanent improvements upon the property upon the faith thereof, the mere value of the occupation during the time is not to be set off against the expenditures made. I think it would not be within the spirit of the rule in equity, that its application should be made to depend, not upon the fact of a consideration for the promise being shown to have existed and to have been performed, but upon the question whether, when specific performance by the donor is claimed, the use has not compensated the donee and relieved the donor's obligation."

After quoting from Freeman v. Freeman, supra, the opinion continues:

"It was stated by Parker, J., in Lobdell v. Lobdell, 36 N. Y. at page 330: 'If the promisee, on the faith of the promise, does some act, or enters into some engagement, which the promise justified, and which a breach of the prom-

ise would make very injurious to him, this equity might regard as confirming and establishing the promise, in much the same way as a consideration for it would.' In such a case as this, to constitute a good consideration in equity, it is, of course, essential that it be substantial; in the sense that the promise shall rest upon a performance by the promisee, which evidences acceptance of and reliance upon the promise and consists in expending moneys in permanent improvements upon the land. * * * If there was the promise to give the property, accompanied by the delivery of possession to the defendant and expenditures in permanent improvements made, in reliance upon the promise, injury will be presumed to follow by a failure to perform it. In enforcing such a promise, equity aims at preventing a fraud upon the donee and regards the case as taken out of the operation of the statute by the part performance."

In Miller v. Ball, 64 N. Y. 286, Judge Earl used this language:

"The principle upon which courts of equity hold that part performance is sufficient is that a party who has permitted another to perform acts on the faith of an agreement shall not be allowed to insist that the agreement is invalid because it was not in writing, and that he is entitled to treat those acts as if the agreement in compliance with which they were performed had not been made; in other words, upon the ground of fraud, in refusing to execute the parol agreement after a part performance thereof by the other party, and when he cannot be placed in the same situation that he was in before such part performance by him. Taking possession under a parol agreement, with the consent of the vendor, accompanied with other acts which cannot be recalled so as to place the party taking possession in the same situation that he was in before, has always been held to take such agreement out of the operation of the statute."

In Ball v. Ball, 97 App. Div. 347, 89 N. Y. Supp. 1046, Hirschberg, J., said:

"The action is in equity, and the right to judgment depends only upon a determination of the equitable title. The plaintiff would have acquired such title upon the mere oral promise of the defendant to give her the property, followed by the delivery of possession and the making by her of substantial improvements such as she unquestionably did make. Her possession in such circumstances even without a deed could not be afterwards disturbed by him, and a court of equity would compel the execution and delivery to her of a promised conveyance. * * * Her equitable title was, in fact, acquired from the defendant notwithstanding that the deed to her was executed by another, and the circumstances of the case, unqualified and uncontradicted, require that the deeds by which he has since sought to obtain title and the right to possession should be canceled and annulled."

In McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446, Follett, Ch. J.:

"The plaintiff testified that it was orally agreed between himself and his father that the former should take possession of the property, have the use of it, and when he had paid the mortgage he was to have a deed. The son was to make such improvements as he chose, with the right of removing them if he failed to pay the mortgage and acquire the property. Under this contract the son occupied the property for nearly eight years, and added to it some new buildings and machinery. Under this contract the plaintiff became the equitable owner of 18 acres, and on paying the mortgage could have compelled a conveyance of the legal title by his father. Freeman v. Freeman, 43 N. Y. 34, 3 Am. Rep. 657. The plaintiff could have devised the land, and, had he died intestate, his interest held under this oral contract would have descended to his heirs subject to the dower right of the widow."

But these are not all the facts. The plaintiff is not compelled to rely soley upon an oral gift. As convincing proof of that gift, Mr. Rogers, his wife joining, executed and had recorded a deed of the property to

the plaintiff. So that it is in possession, it has changed its situation, it has incurred enlarged liabilities, it has expended its money on improvements, and it holds the record title. But there is a cloud upon that title—a cloud of which it had no knowledge till years after the taking of possession, the change of situation, the making of improvements, the recording its deed, and the death of the donors, Mr. and Mrs. Rogers. Assuming that the donors had perfected their accepted gift by a deed giving a clear and unincumbered title in fee, they find an overdue alleged purchase-money mortgage for $600,000, $150,000 more than the cost to Mr. Rogers of the property and building, carrying a yearly obligation for $36,000 interest. It was not a purchase-money mortgage. It was an instantaneous transaction by which the property ostensibly got out of the ownership of Mr. Rogers just long enough to place a mortgage thereon, when it came back to his ownership permitting him to convey to plaintiff with this grievous burden, which did not represent a dollar of expenditure or indebtedness between any of the parties to the transaction. What his purpose was is unknown. It was never disclosed to the plaintiff in his lifetime.

It is a cloud upon the plaintiff's title. It was without consideration. It was a dummy transaction. It was perpetrated long after the taking of possession by the plaintiff. All this is admitted by the demurrer. There is no other way of characterizing the transaction than as a fraud on the plaintiff. Adopting resolutions of appreciation and thanks with public dedication, it finds its supposed generous donor has saddled it with the onerous burden of a $600,000, 6 per cent. mortgage which does not represent a dollar of actual money or indebtedness. To say that, such facts being conceded, as they are by the demurrer, no cause of action is stated in equity, is to leave a court of equitable jurisdiction helpless and useless. If these facts are established upon the trial, the court will have no difficulty in dispelling this most substantial and threatening cloud on plaintiff's title.

The order sustaining the demurrers to the complaint should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs to the appellant, with leave to the respondents to withdraw demurrers and answer over within 20 days and upon payment of said costs. All concur.